##### IN THE

# SUPREME COURT OF JUDICATURE

##### OF THE

## STATE OF INDIANA,

#### AT INDIANAPOLIS, NOVEMBER TERM, 1877, IN THE SIXTY-SECOND YEAR OF THE STATE.

---

### BUCHMAN v. THE STATE.

WITNESS.—*Physician and Surgeon.—Professional Opinion.—Compensation.— Contempt.*—While a physician or surgeon may be required to attend as a witness, and to testify to facts as other witnesses, and without other compensation than that provided by law for other witnesses, yet he can not be required to testify as to his professional opinion, over his objection to doing so without the compensation of a professional fee; and his refusal to so testify unless so compensated is not a contempt. (BIDDLE, C. J., and NIBLACK, J., dissented.)

From the Allen Criminal Circuit Court.

*R. Stratton,* for appellant.

*W. G. Colerick* and *S. M. Hench,* Prosecuting Attorney, for the State.

WORDEN, J.—One Hamilton was on trial in the court below, on an indictment charging him with the commission of a rape. On the trial, he put upon the stand as a witness the appellant herein, Dr. Buchman, who testified as follows, upon questions propounded as we suppose, viz.:

" My name is A. A. Buchman; I am a practising physician; I have resided in Fort Wayne for two years; graduated at the College of Medicine and Surgery, of Cincinnati, Ohio, in 1870, and have practised since that time.

" Ques.    State to the jury whether or not, in female menstruation, there is sometimes a partial retention of the menses, after the main flow has ceased?

"Ans.    I refuse to answer the question, unless I am reasonably compensated for it, before testifying as a medical expert; I do this with all respect to the court.

" Ques.    What is your opinion, in case of menstruation in females, as to the menstrual flow changing in color, gradually, from red or dark to a lighter color?

"Ans.    The answer that I would have to give would depend upon my professional knowledge of the subject, and I respectfully refuse to give my professional opinion without being compensated.

" Ques.    To whom do you look for your pay?

"Ans. ' I expect the party calling me shall compensate me, or that the court shall provide some means of compensation."

The court being of opinion that the witness was required by law to answer the questions without compensation other than ordinary witness fees, and the witness persisting in his refusal to answer, he was committed as for contempt. From the commitment, the witness appeals to this court.

The question presented being a novel one in Indiana, so far as we are advised, and an important one, we have bestowed such time and care upon its consideration as its importance seemed to require.

It must be, and is, conceded, that a physician or surgeon, when called upon, must attend, and testify to facts within his knowledge, for the same compensation, in the way of fees, as any other witness. In respect to facts within his knowledge, he stands upon an equality, in ref-

Buchman *v.* The State.

erence to compensation, with all other witnesses. But the question presented is, whether he can be compelled to give a professional opinion without compensation other than the ordinary fees of witnesses.

In England, there is some diversity in the decisions, in respect to the question, whether an attorney or medical man is entitled to higher compensation for attendance as a witness, than ordinary witnesses. This diversity, however, relates to witnesses required to testify to facts, and not to give professional opinions. In respect to professional opinions, we are not aware of any diversity of decision.

In note 2 to sec. 310, 1 Greenl. Ev., 13th ed., it is said, that "An additional compensation, for loss of time, was formerly allowed to medical men and attorneys; but that rule is now exploded. But a reasonable compensation paid to a foreign witness, who refused to come without it, and whose attendance was essential in the cause, will in general be allowed and taxed against the losing party. See *Lonergan* v. *The Royal Exchange Assurance*, 7 Bing. 725; S. C., Id. 729; *Collins* v. *Godefroy*, 1 B. & Ad. 950.

" There is also a distinction between a witness to facts, and a witness selected by a party to give his opinion on a subject with which he is peculiarly conversant from his employment in life. The former is bound, as a matter of public duty, to testify to facts within his knowledge. The latter is under no such obligation; and the party who selects him must pay him for his time, before he will be compelled to testify. *Webb* v. *Page*, 1 Car. & K. 23."

The case of *Lonergan* v. *The Royal Exchange Assurance,* referred to in the above note, was not the case of a witness called to give a professional opinion; but the witness was a foreign sea captain, without whose presence the plaintiff's attorney "deemed it unsafe to trust the trial of the cause to written depositions, so long as he could prevail on the captain to remain in England to give his evidence personally on the trial before the jury; inasmuch as the

demeanor and manner of Captain Moffatt's giving his evidence before a jury might have great weight with a jury, in addition to his intelligence and gentlemanly appearance." TINDAL, C. J., said, amongst other things: "But the general rule has been, that where witnesses attend under a subpœna, none receive any allowance for loss of time except medical men and attorneys. If that rule were to undergo revision, I cannot say it would stand the test of examination. There is no reason for assuming, that the time of medical men and attorneys is more valuable than that of others whose livelihood depends on their personal exertions. But that rule is not applicable to the case of a foreign witness, who may refuse to attend if the terms he proposes are not acceded to. If he asks only what is reasonable, I cannot see why it should not be allowed, and be charged to the unsuccessful party."

The case which is supposed to have exploded the rule, that attorneys and medical men are to have additional compensation for loss of time, is that of *Collins* v. *Godefroy,* cited in the above note. In that case, Collins sued Godefroy, to recover a remuneration for plaintiff's loss of time in attending as a witness, under a subpœna issued by Godefroy, in a case in which Godefroy was a party. The plaintiff attended six days as a witness, but was not called upon to give his evidence. LORD TENTERDEN, C. J., said: "If it be a duty imposed by law upon a party regularly subpœnaed, to attend from time to time to give his evidence, then a promise to give him any remuneration for loss of time incurred in such attendance is a promise without consideration. We think that such a duty is imposed by law; and on consideration of the statute of Elizabeth, and of the cases which have been decided on the subject, we are all of opinion that a party can not maintain an action for compensation for loss of time in attending a trial as a witness. We are aware of the practice which has prevailed in certain cases, of allowing, as costs be-

tween party and party, so much per day for the attendance of professional men; but that practice cannot alter the law. What the effect of our decision may be, is not for our consideration. We think, on principle, that an action does not lie for a compensation to a witness for loss of time in attendance under a subpœna."

But, notwithstanding the case above noticed, the rule allowing professional men additional compensation was followed in England as late as 1862. In the case of *Parkinson* v. *Atkinson*, 31 L. J. N. s. C.P. 199, the master had allowed the expenses of an attorney, who was called as a witness, but who did not give professional evidence, on the higher scale allowed to professional witnesses. On motion for a rule to show cause why the taxation should not be reviewed, ERLE, C. J., said: "We do not approve of the rule which is said to prevail in criminal cases, that if a surgeon is called to give evidence not of a professional character he is only to have the expenses of an ordinary witness. We think the master was quite right in allowing the expenses of this witness on the higher scale."

So, also, in the case of *Turner* v. *Turner*, 5 Jur. N. s. 839, the master allowed one Marcus Turner, a barrister of London, one pound and a shilling a day, for attendance as a witness. The Vice-Chancellor said: "The right of a professional man to 1*l.* 1*s.* per day, was founded on the fact of his being abstracted from his functions. It was unnecessary to say what classes came within the definition 'professional man,' but there was no doubt that a barrister did, and if subpœnaed as a witness he had a right to receive the remuneration, small and scanty as it was."

The motion to vary the taxation was overruled.

The foregoing cases, however, do not decide the point involved here; and they have been noticed, rather with a view of showing that they are not in conflict with the

right claimed by the appellant, than as establishing that right.

We come now to authorities more directly in point.

The case of *Webb* v. *Page*, cited in the above note from 1 Greenl. Ev., decided in 1843, was an action for negligence in carrying goods.

A witness was called for the plaintiff, to speak to the nature of the damage sustained by the goods, consisting of cabinet work, and the expense that would be necessary to restore or replace the injured articles. The witness demanded compensation, and MAULE, J., in deciding the point raised, used the language set out in the latter part of the note above cited from Greenleaf. The witness, upon receiving an undertaking for his pay, was examined. This is the only English case that bears directly upon the point, of which we have any knowledge.

The American cases are not numerous, and we proceed to notice such as there are.

*In the Matter of Roelker*, Sprague, 276, during a trial upon an indictment, the district attorney moved for a capias to bring in a witness who had been subpoenaed to testify as an interpreter. But SPRAGUE, J., said, "that a similar question had heretofore arisen as to experts, and he had declined to issue process to arrest, in such cases. When a person has knowledge of any fact pertinent to an issue to be tried, he may be compelled to attend, as a witness. In this all stand upon equal ground. But to compel a person to attend, merely because he is accomplished in a particular science, art, or profession, would subject the same individual to be called upon, in every cause in which any question in his department of knowledge is to be solved. Thus, the most eminent physician might be compelled, merely for the ordinary witness fees, to attend from the remotest part of the district, and give his opinion in every trial in which a medical question should arise. This is so un-

reasonable, that nothing but necessity can justify it. The case of an interpreter is analogous to that of an expert. It is not necessary to say what the court would do, if it appeared that no other interpreter could be obtained, by reasonable effort. Such a case is not made, as the foundation of this motion. It is well known, that there are in Boston many native Germans, and others skilled in both the German and English languages, some of whom it may be presumed might, without difficulty, be induced to attend, for an adequate compensation."

In the case of *The People* v. *Montgomery*, 13 Ab. Pr. Rep. N. S. 207, Montgomery was indicted for murder. The district attorney had procured the attendance of Dr. Hammond, as a witness, to testify professionally in the cause, who was paid, or to be paid, the sum of five hundred dollars for his attendance and services as such witness. This was complained of as an irregularity. The court said, E. D. SMITH, P. J., delivering the opinion : "We do not see that the calling of Dr. Hammond as a witness, and the payment to him of a sufficient sum to secure his attendance at the court, during the trial, was in any respect an irregularity or did any wrong to the prisoner. It seems to us that the district attorney was acting in the line of his duty as public prosecutor in securing the attendance of a proper medical witness of high repute, to meet the distinguished medical experts which he knew the prisoner expected to call on his side. * * * The district attorney, it is true, might have required the attendance of Dr. Hammond on subpœna; but that would not have sufficed to qualify him to testify as an expert, with clearness and certainty, upon the question involved. He would have met the requirement of a subpœna if he had appeared in court when he was required to testify, and given proper impromptu answers to such questions as might then have been put to him in behalf of the people. He could not have been required, under process of subpœna, to examine the

case and *to have used his skill and knowledge to
enable him to give an opinion upon any points of the* case,
nor to have attended during the whole trial and atten-
tively considered and carefully heard all the testimony
given on both sides, in order to qualify him to give a
deliberate opinion upon such testimony as an expert·in
respect to the question of the sanity of the prisoner.   Pro-
fessional witnesses, I suppose, are more or less paid for
their time and services and expenses, when called as ex-
perts in important cases, in all parts of the country."

These cases go far to establish the position contended
for by the appellant.   But, on the other hand, the case of
*Ex parte Dement*, decided by the Supreme Court of Ala-
bama, and reported in "The Reporter," vol. 5, Jan. 30th,
187$, p. 138, decides, that a physician or surgeon may be
compelled to testify as an expert, where the testimony is
relevant to a cause pending before a judicial tribunal,
without being paid as for a professional opinion.

Having thus considered the cases that have come under
our notice, bearing on the subject, it may be well to look
at the works of text writers; for they furnish, at least,
some evidence of what the law is.

In 1 Taylor's Principles of Medical Jurisprudence, p.
19, it is said, that, "Before being sworn to deliver his
evidence, a medical or scientific witness may claim the
payment of his customary fees, unless an arrangement
has already been made between him and the solicitors
who have sent him a subpœna.   These fees are generally
made a matter of private arrangement between the witness
and the attorney."   This clearly implies that he is to be
paid his customary fees for an opinion, and that he may
demand payment before delivering his evidence.   But we
doubt whether he could make the demand before being
sworn; for he might· be called upon to prove some fact
within his knowledge.

In The Jurisprudence of Medicine in its Relation to
the Law of Contracts, Torts and Evidence, by John Or-

dronaux, sections 114, 115, it is said: "But once put upon the stand as a skilled witness, his" (the physician's) "obligation to the public now ceases, and he stands in the position of any professional man consulted in relation to a subject upon which his opinion is sought. It is evident that the skill and professional experience of a man are so far his individual capital and property, that he cannot be compelled to bestow it gratuitously upon any party. Neither the public, any more than a private person, have a right to extort services from him in the line of his profession, without adequate compensation. On the witness' stand, precisely as in his office, his opinion may be given or withheld at pleasure, for a skilled witness cannot be compelled to give an opinion, nor committed for contempt if he refuses to do so. * * * As the result of the foregoing conclusions it may be said, that a witness who is called in an action to depose to a matter of opinion, depending on his skill in a particular trade, has, before he is examined, a right to demand, from the party calling him, a compensation for his services; for there is a wide distinction between a witness thus called, and a witness who is called to depose to facts which he saw."

Then follow the remarks of MAULE, J., in the case of *Webb* v. *Page,* which have already appeared in this opinion.

In 2 Phil. Ev., 4th Am. ed., p. 828, it is said: "With respect to compensation for loss of time, the general rule is, that it ought not to be allowed; though some compensation has been usually allowed to medical men and attorneys, but not to others. And there seems to be a reasonble distinction between the case of a witness called to depose to a fact, and one who is called to speak to a matter of opinion, depending on his skill in a particular profession or trade; the former is bound, as a matter of public duty, to speak to the fact which has occurred within his knowledge; but the latter is under no such obligation, and is selected by the party, to give his opinion merely; and he

is entitled, therefore, to demand a compensation for loss of time."

In 1 Redfield Wills, note 46 to par. 31, pp. 154–5, the author says the following propositions may be of interest:

"1. It is clear that experts are not obliged to give testimony upon mere speculative grounds, and where they have no personal knowledge of the *facts* in the case. If they have had personal knowledge of the testator, it may fairly be regarded as amounting to the knowledge of facts. But unless that is the case, a medical witness is not obliged to obey the ordinary witness subpœna, and will not be held in contempt for disobeying it. This has been so ruled at *nisi prius* in England within the last few years.

"2. The expert is not obliged to examine books and precedents, with a view to qualify himself to give testimony; nor is he obliged to examine into the facts of cases, by personal inspection of individuals, whose state may be the subject of controversy in courts.

"3. It being purely matter of conventional arrangement between professional experts and those who desire to employ them as witnesses, both in regard to their acting as such, and also their making preparation to enable them to give such testimony, it virtually places a price upon such testimony in the market, and its price is likely to range, somewhat according to its ability to aid one or other of the parties litigant. The tendency of this is to render it partisan and one-sided, as a general thing."

Judge REDFIELD in no manner dissents from the above propositions as legal ones, but suggests, not that experts are not entitled to be paid, but that the law should be so changed, " that this class of witnesses should be selected by the court, and that this should be done wholly independent of any nomination, recommendation, or interference of the parties, as much so, to all intents, as are the jurors. To this end, therefore, the compensa-

tion of scientific experts should be fixed by statute, or by the court, and paid out of the public treasury, and either charged to the expense of the trial, as part of the costs of the cause, or not, as the legislature should deem the wisest policy."

Iowa has legislated upon the subject, so that the court is to fix the compensation, with reference to the time employed and the degree of learning or skill required. *Snyder* v. *Iowa City*, 40 Iowa, 646.

These elementary authorities, and the cases of *Webb* v. *Page*, *The People* v. *Montgomery*, and *In the Matter of Roelker*, *supra*, clearly and unmistakably point to the conclusion, that the appellant was not bound to give his professional opinion, without having been paid therefor.

It would seem, on general principles, that the knowledge and learning of a physician should be regarded as his property, which ought not to be extorted from him, in the form of opinions, without just compensation. It was said by this court of an attorney, in the case of *Webb* v. *Baird*, 6 Ind. 13 : "To the attorney, his profession is his means of livelihood. His legal knowledge is his capital stock."

The property which an attorney or physician may have in his professional knowledge, if it is to be regarded in the light of property, may not be of a tangible, corporeal character; it may be neither goods nor chattels, lands nor tenements, but it may, nevertheless, be property. A party who has a copyright in a book has a property, which consists, not in the right to the book merely, but in the exclusive right of multiplying copies thereof. 2 Cooley's Bl. Com. 405; Curtis Copyright, 13; Copinger Law of Copyright, 1, note a.

The question has been considered thus far only upon general principles of law. We proceed now to test it by the constitution of the State. Sec. 21 of the bill of rights provides, that "No man's particular services shall be demanded without just compensation."

In *Israel* v. *The State*, 8 Ind. 467, it was held, that the services of witnesses in criminal cases were not "particular services," within the meaning of the constitution. This is conceded. Witnesses who know anything of a case, however high or low, rich or poor, learned or unlearned they may be, or whether occupying public or private stations in life, all stand upon an equality in this respect, and must attend as witnesses, without other compensation than that provided by law. This is a burden that falls upon all alike. The witnesses are bound to attend, and, in the language of some of the authorities before cited, "speak to the facts which have occurred within their knowledge. But the case decides nothing upon the point here involved. The case of *Blythe* v. *The State*, 4 Ind. 525, however, is exactly in point, in principle. There Blythe, an attorney of the court, was appointed to defend a pauper, on the charge of a larceny. Blythe denied the right of the State, or the court, to demand his professional services without compensation, and refused to act. For this refusal the court adjudged him guilty of contempt. This court held, under the provision of the constitution above set out, that he was not bound to perform the service.

In *Webb* v. *Baird*, 6 Ind. 13, Baird had been appointed to defend a pauper, on a criminal charge, and had performed the service; and the question involved was, whether he was entitled to compensation from the county. Judge STUART said, in delivering the opinion of the court, "that any class should be paid for their particular services in empty honors, is an obsolete idea, belonging to another age and to a state of society hostile to liberty and equal rights. * * * To the attorney, his profession is his means of livelihood. His legal knowledge is his capital stock. His professional services are no more at the mercy of the public, as to remuneration, than are the goods of the merchant, or the crops of the farmer, or the wares of the mechanic. The law which requires

gratuitous services of a particular class in effect imposes
a tax to that extent upon such class—clearly in violation
of the fundamental law, which provides for a uniform
and equal rate of assessment and taxation upon all
the citizens."

But, if the professional services of a lawyer cannot be
required in a civil or criminal case without compensation,
how can the professional services of a physician be thus
required? Is not his medical knowledge his capital
stock? Are his professional services more at the mercy
of the public, than the services of a lawyer? When a
physician testifies as an expert, by giving his opinion, he
is performing a strictly professional service. To be sure,
he performs that service under the sanction of an oath.
So does the lawyer, when he performs any service in a
cause. The position of a medical witness, testifying as
an expert, is much more like that of a lawyer than that
of an ordinary witness, testifying to facts. The purpose
of his service is not to prove facts in the cause, but to aid
the court or jury in arriving at a proper conclusion from
facts otherwise proved. Is not this also the province and
business of an attorney? And are not the services of
each equally "particular?" All attempts to make a dif-
ference in the two cases are but losing sight of the sub-
stance, and grasping at the shadow.

If physicians or surgeons can be compelled to render
professional services, by giving their opinions on the trial
of criminal causes, without compensation, then an emi-
nent physician or surgeon may be compelled to go to any
part of the State, at any and all times, to render such
service, without other compensation than such as he may
recover, as ordinary witness fees, from the defendant in
the prosecution, depending upon his conviction and abil-
ity to pay. This, under the general principles of law and
the constitution of the State, he can not be compelled
to do. If he knows facts pertinent to the case to be tried,
he must attend and testify as any other witness. In

respect to facts within his knowledge, his qualifications as a physician or surgeon are entirely unimportant. In respect to facts, as before stated, he stands upon an equality with all other witnesses, and the law, as well as his duty to the public, requires him to attend and testify for such fees as the legislature has provided. Not so, however, in respect to his professional opinions. In giving them, he is performing a "particular" service, which can not be demanded of him without compensation.

The 13th section of the bill of rights provides, that, in all criminal prosecutions, the accused shall have the right to have compulsory process for obtaining witnesses in his favor.

This provision has no bearing upon the question involved. The term "witnesses," as thus used, was used in its ordinary sense, as embracing those who know, or are supposed to know, some fact or facts pertinent to the cause. But the physician or surgeon, when giving his professional opinion in a court, does not, as before stated, occupy the position of a witness testifying to facts. He performs the service under oath, to be sure, and this is the only circumstance from which he can be called a witness at all. So the judge upon the bench, the lawyer at the bar, and the jury in the jury-box, all perform their services under oath.

It is unnecessary to determine in this case, whether all classes of experts can require payment before giving their opinions as such. It is sufficient to say, that physicians and surgeons, whose opinions are valuable to them as the source of their income and livelihood, can not be compelled to perform service, by giving such opinions in a court of justice, without such payment.

The appellant could not have been legally required to answer the questions propounded to him, without compensation, and his commitment for contempt was erroneous.

The judgment below is reversed, and the cause remanded.

---

NOTE.—BIDDLE, C. J., and NIBLACK, J., dissent from the foregoing opinion, on grounds stated by BIDDLE, C. J., in the case of *Dills* v. *The State, post,* p. 15.