## J. N. DIXON

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed November 1, 1897.*

1. EXPERTS—*physician may be compelled to testify without special pay.* A physician, subpœnaed and interrogated as an expert witness only, cannot refuse to testify upon the ground that no compensation greater than that allowed to ordinary witnesses has been paid or promised to him.

2. SAME—*expert must testify in civil suits as well as criminal.* The right of a court to compel a physician to give expert testimony in answer to a hypothetical question calling for his opinion extends to suits between individuals and is not confined to criminal prosecutions, since in either case the object is to promote public justice and insure the peace and good order of society.

3. CONTEMPT—*refusal of physician to testify as an expert is contempt.* Refusal of a physician, who has been regularly subpœnaed and placed upon the witness stand, to answer a hypothetical question calling for his opinion, for the reason that special compensation has not been paid or assured to him, justifies the trial court in fining such physician for contempt.

*Dixon v. People,* 63 Ill. App. 585, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county, the Hon. JAMES A. CREIGHTON, Judge, presiding.

At the January term, 1895, of the circuit court of Sangamon county, the case of Olive Purdy against the city of Springfield was on trial. It was a suit for damages for injury caused by a defective sidewalk. The appellant, Dr. J. N. Dixon, was called as an expert witness on the part of the city, and testified that he was a physician and surgeon; that he had practiced, as such, twenty-one years, and nineteen of them in Springfield; that he was surgeon for five railroads running into said city, and had been such surgeon from two to seventeen years; and that he was a graduate of regular schools of

medicine, and had been practicing general surgery for eighteen years. The witness was then asked this question: "Doctor Dixon, suppose a patient, a woman forty-five years of age, who had been married seventeen years, had one child twelve years ago, and a miscarriage ten years ago, never pregnant since, living with her husband all the time, doing her own work as a housewife, enjoying perfect health, should, when walking at a moderate gait, trip on a sidewalk by reason of the end of a board tipping up, and should thereupon fall forward on her hands and knees, with such force as to make a slight abrasion on her knee, and felt no other immediate injury, but in two or three days thereafter should claim that she had falling of the womb, and that her breast, stomach and spine had been injured by reason of said fall, what would you say as to such injuries being the probable results of such fall?" This question the witness declined to answer, stating the following, as his reason for so declining: "On the ground that an expert witness is entitled to a different and greater compensation than an ordinary witness is allowed, and that an expert is not required to give expert testimony without compensation as an expert, unless a reasonable compensation shall have been paid or provided for. My reasonable fee for an expert or professional opinion in this case is $10.00. I have not been paid, nor offered anything for compensation for my expert or professional opinion in this case, nor has said compensation been in any way promised to me or provided for. On the contrary, it has been expressly refused. Therefore I decline to testify until such fee is provided for." It was conceded, that the witness knew nothing about the facts of the case, and was called as an expert only. It was also conceded, that the charge of $10.00 as a fee, if a legal one, was reasonable, but that the city had no means provided for paying such fee, and had not promised to pay the same. The witness was brought into court by a regular subpœna, the same as any

ordinary witness. The witness again stated in answer to a question by the court, that he declined to answer, because he had received no fee, nor any promise of a fee as an expert. Thereupon the court stated to the witness, that he was not entitled to receive any such fee, but that it was his duty to testify as an expert witness. In answer to a further question by the court the witness stated, that he was not willing to testify, although informed by the court that it was his duty to do so; and the witness refused to answer the question. The clerk was then directed to docket a case against the witness for contempt, and the court stated to the witness, that it was the order of the court he should answer the question, and he still declined to do so. Thereupon, the court found him guilty of contempt, and, for such contempt, fined him in the sum of $25.00. This order, fining the witness, was excepted to, and his counsel made a motion for remission of the fine, which motion was overruled by the court. To the order overruling the motion exception was taken, and an appeal was brought to the Appellate Court. The Appellate Court has affirmed the judgment of the circuit court and given a certificate of importance. The present appeal is prosecuted from such judgment of affirmance so entered by the Appellate Court.

CONKLING & GROUT, for appellant:

Opinions of witnesses are not competent where inquiry is into a subject matter an understanding of the nature of which does not require any peculiar habit, study or scientific knowledge. *Linn* v. *Sigsbee*, 67 Ill. 75; *Railroad Co.* v. *Reich*, 101 id. 157; *Wight Fire Proofing Co.* v. *Poczekai*, 130 id. 139; *Pennsylvania Co.* v. *Conlan*, 101 id. 93.

A witness is not permitted to give his opinion as an expert in reference to a matter which does not involve a question of science, skill or trade. *Railroad Co.* v. *People*, 143 Ill. 449.

Expert evidence is that given by one specially skilled or experienced in the subject to which it is applicable, concerning information beyond the range of ordinary knowledge, observation and experience. *Hopkins* v. *Railroad Co.* 78 Ill. 32; *Railway Co.* v. *Adams*, 108 id. 577; Rogers on Expert Testimony, 13; 7 Am. & Eng. Ency. of Law, 491; *Hamilton* v. *Railroad Co.* 36 Iowa, 31; *Muldoway* v. *Railroad Co.* 36 id. 702; *Gas Light Co.* v. *O'Brien*, 15 Ill. App. 400.

The ordinary affairs of life, or such as men in general are capable of comprehending and understanding, cannot be the subject of expert testimony. *Pennsylvania Co.* v. *Conlan*, 101 Ill. 93; 7 Am. & Eng. Ency. of Law, 13; *Linn* v. *Sigsbee*, 67 Ill. 75; *Hopkins* v. *Railroad Co.* 78 id. 32; 1 Rice on Evidence, chap. 9, sec. 195.

But when there is a question as to any point of science or art, the opinions upon that point of persons specially skilled in any such matter are deemed to be relevant facts. The words "science or art" include all subjects on which a course of special study or experience is necessary to the formation of an opinion. Stephens' Digest, sec. 49; 1 Rice on Evidence, chap. 9, sec. 192.

In England the statute of 5 Eliz. chap. 9, doubtless formulated a pre-existing custom, and provided that witnesses should be paid, according to their countenance and calling, a reasonable sum. Instances are recorded where the courts received opinions of witnesses learned in the sciences and arts. *Buckley* v. *Rice*, 1 Plow. 125.

Inasmuch as an expert is not an ordinary witness, the inquiry naturally arises whether he stands upon a similar footing of obligation to the public merely from the fact of citizenship. It is not for him to demur attending until first rewarded. His simple duty is to attend. But once upon the stand as a skilled witness his obligation to the public ceases, and he stands in the position of any professional man consulted in relation to a subject upon which his opinion is sought. Ordronaux on Jurisprudence of Medicine, 138-142.

It is consistent with the policy of the law that an expert should be specially feed, so that the testimony of competent scientific men can be obtained without loss to themselves.   Wharton on Evidence, secs. 380, 456.

There seems to be a reasonable distinction between the case of a witness called to depose to a fact and one who is called to speak to a matter of opinion depending on his skill in a particular profession or trade.   The former is bound, as a matter of public duty, to speak to the fact which has occurred within his knowledge; but the latter is under no such obligations, and is selected by the party to give his opinion, merely, and he is entitled, therefore, to demand a compensation for loss of time. 2 Phillips on Evidence, (4th Am. ed.) 828.

An expert witness called to testify his opinion is entitled to compensation over and above the fees allowed other witnesses by law.   If he refuse to testify unless his fee is paid he cannot be committed for a contempt. Underhill on Evidence, 277.

Experts are not obliged to give testimony upon mere speculative grounds and where they have no personal knowledge of the facts in the case.   If they have had personal knowledge it may fairly be regarded as amounting to knowledge of the facts.   But unless that is the case a medical witness is not obliged to obey the ordinary witness subpœna, and will not be held in contempt for disobeying.   1 Redfield on Wills, sec. 31, p.154, note 44.

Competent expert testimony is frequently of prime necessity in order to establish the merits of the controversy, and it is entirely consistent with the policy of the law that experts called to testify should be adequately paid.   1 Rice on Evidence, chap. 14, sec. 197.

The weight of authority is, that an expert cannot be compelled to give a professional opinion without compensation.   Anderson's Law Dic.

It has been a matter of grave discussion whether an expert is bound to testify on matters of opinion without

extra compensation, the weight of decisions being that he is not bound to do so.   Bouvier's Law Dic.

The English practice is now settled that extra compensation to scientific witnesses may be taxed.   Lawson on Expert Evidence,—citing *Batley* v. *Kynock*, L. R. 20 Eq. Cas. 632; *In re Laffitte*, id. 650.

The question as to what constitutes the "reasonable costs and charges" of a witness under the statute of 5 Eliz. was left in former times very much to the discretion of the tax officers.   Taylor on Evidence, sec. 1126.

The custom appears to be to allow to "members of the profession of the law or medicine," when they attend trials to give professional evidence, higher fees than to any ordinary witness.   Taylor on Evidence, sec. 1135.

Counsel for appellant also cited the following cases to illustrate the practice of the English courts concerning special allowances of fees:   *Moore* v. *Adam*, 5 M. & S. 156; *Severn* v. *Olive*, 3 B. & B. 72; *Willis* v. *Peckham*, 1 id. 515; *Webb* v. *Page*, 47 Eng. C. L. 23; *Turner* v. *Turner*, 5 Jur. 839; *Betts* v. *Clifford*, Warwick Lent Assizes, 1858; *Parkinson* v. *Atkinson*, 31 L. J. (N. S.) 199.   Also the following American cases and authorities:   *In re Roelker*, 1 Sprague, 276; *In re Attorney General*, 104 Mass. 537; *Buchman* v. *State*, 59 Ind. 1; *Wright* v. *People*, 112 Ill. 540; *Hutchinson* v. *Hutchinson*, 152 id. 347.

JAMES M. GRAHAM, State's Attorney, for the People:

Contempt of court is a disobedience to the rules or orders of the court which interferes with the due administration of the law.   3 Am. & Eng. Ency. of Law, 777.

A court of record has power to punish for contempt a witness who refuses to answer a question determined by the court to be proper.   Such power is necessarily implied in the establishment of a judicial tribunal.   Wharton on Crim. Evidence, sec. 450; Bishop on Stat. Crimes, 137.

The exercise of this power is entirely in the discretion of the court, and will not be re-examined except when the

proceedings are so grossly defective as to be void.  3 Am. & Eng. Ency. of Law, 800.

If an expert claims he is exempt from the general rule concerning witnesses, the burden is on him to establish the exception.  Rogers on Expert Evidence, (2d ed.) 427.

It will be well to bear in mind from the outset that at common law no witness fees were paid, and that in the absence of a statute authorizing it no fees can now be taxed as costs or recovered.  *Fish* v. *Farwell*, 33 Ill. App. 244; 1 Gilm. 165; *Constant* v. *Matteson*, 22 Ill. 560; *Smith* v. *McLaughlin*, 77 id. 597; *In re Attorney General*, 103 Mass. 542; *Eimar* v. *Eimar*, 47 Ill. 375.

Statutes allowing costs, being in derogation of the common law, must be strictly construed.  23 Am. & Eng. Ency. of Law, 387; *Cadwallader* v. *Harris*, 76 Ill. 370.

The power to suppress a contempt by an immediate offender results from the first principles of judicial establishments, and must be an inseparable attendant on every superior tribunal.  Anderson's Law Dic.; 3 Am. & Eng. Ency. of Law, 790, note 2; 3 Scam. 395; 2 Bishop on Crim. Law, (8th ed.) 243; *People* v. *Wilson*, 64 Ill. 197.

Summary punishment for contempt is not an infringement of the constitutional right of trial by jury.  3 Am. & Eng. Ency. of Law, 795, 791, note 2; 6 id. 49, 50, note 1.

Where a duty is imposed by law and the compensation for its performance is fixed by law no greater compensation can be exacted or enforced.  *Walker* v. *Cook*, 33 Ill. App. 563; *Smith* v. *McLaughlin*, 77 Ill. 596; *Collins* v. *Godefroy*, 1 B. & A. 950.

A professional witness in the discharge of his duty as a good citizen is, like any other person, whether he be laborer, merchant, broker, manufacturer or banker, compellable to attend in obedience to process and to testify as to what he may know, whether it be observed facts or accumulated knowledge acquired by study and experience.  *Lorimer County* v. *Lee*, 3 Col. App. 177.

The *Buchman case,* 59 Ind. 1, is the only recent, or comparatively recent, case, which takes plaintiff in error's view of the matter, and it was decided by a divided court, whereas in the support of our view are the *Dement case,* 53 Ala. 389, *Summers case,* 5 Tex. 365, *State* v. *Teipner,* 36 Minn. 535, and *Lorimer County* v. *Lee,* 3 Col. App. 177, in all of which the reasoning is equally applicable to civil as to criminal matters; and while our Supreme Court has not passed on the identical question at bar, it has passed on a parallel question in the cases of *Edgar County* v. *May,* 3 Gilm. 83, and *Vise* v. *Hamilton County,* 19 Ill. 78, and has clearly inclined to the view we contend for in *Wright* v. *People,* 112 Ill. 540, and *Hutchinson* v. *Hutchinson,* 152 id. 347.

The ablest of the text writers on the subject of expert evidence wrote that "the weight of authority rather inclines to the theory that the expert may be required to answer without additional compensation." Rogers on Expert Evidence, 425.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question in this case is, whether a physician, who has been subpœnaed and is interrogated as an expert witness only, can be punished as for a contempt for refusing to testify, when no compensation, greater than that allowed to an ordinary witness, has been paid to him or promised to him.

The question here involved has never been directly decided by this court. In *Wright* v. *People,* 112 Ill. 540, a physician, before appearing as a witness, had visited a patient professionally, and had stated while testifying as a witness without any objection on his part the condition of the patient, whom he had thus visited; he was then asked his opinion as to the cause of the symptoms he had thus discovered to exist, but refused to answer without a professional fee being paid or secured to him therefor. In that case it was held, that the witness

could not refuse to state the cause of the symptoms he had discovered to exist, upon the ground that such statement was pertinent to the subject about which he had already testified voluntarily. But no opinion was there expressed concerning the precise question here involved. In *Hutchinson* v. *Hutchinson*, 152 Ill. 347, the question arose, whether a court of equity had a right to compel payment for the services of the solicitor of a guardian *ad litem* of an infant defendant, and for the time and services of two physicians, who were expert witnesses for said guardian *ad litem.* In that case we said (p. 355): "The general rule that prevails in this State is, that solicitors' fees and experts' fees cannot be taxed as costs against unsuccessful litigants in chancery suits, and that the discretion of the chancery courts in awarding costs in such cases is confined to statutory allowances." The ruling in the *Hutchinson case*, however, is not decisive of the question, which is presented in the case at bar.

At common law no witness fees were paid. Costs are a creature of the statute, and, in the absence of a statute authorizing it, no fees can now be taxed as costs or recovered. (3 Blackstone's Com. 369; *Constant* v. *Matteson*, 22 Ill. 546; *Eimer* v. *Eimer*, 47 id. 373; *Smith* v. *McLaughlin*, 77 id. 596; *County Commissioners* v. *Lee*, 3 Col. Ct. App. 177). Section 47 of chapter 53 of the Revised Statutes of this State provides, that "every witness attending in his own county upon trials in the court of record shall be entitled to receive the sum of one dollar for each day's attendance and five cents per mile each way for necessary travel." There is also a provision for paying witnesses from a foreign county in criminal cases. As, therefore, such fees only can be taxed as costs, as are provided for in the statute, and as only such witness fees, as are specified in said section 47, are provided for in the statute, it is manifest, that no extra compensation for the services of an expert witness, testifying to a matter of opinion, can be taxed as costs against the defeated party. Many of the

cases in England, which are referred to as sustaining the doctrine, that such expert witness may be allowed an extra fee for his services are based upon the statute of 5 Eliz. chap. 9, which enacted that the witness must "have· tendered to him according to his countenance or calling his reasonable charges." Greenleaf in his work on Evidence (15th ed. sec. 310) says, that "in this country these reasonable expenses are settled by statutes, at a fixed sum for each day's actual attendance, and for each mile's travel, from the residence of the witness to the place of the trial and back, without regard to the employment of the witness, or his rank in life." Our statute treats all witnesses alike, regardless of their "countenance or calling," whether they be physicians, or lawyers, or ordinary citizens, so far as the question of the taxation of their fees as costs is concerned. Witnesses are not entitled to special privileges on account of their rank or employment. Best in his work on Evidence (8th ed. p. 112, note *a*), refers to a passage in the work of Jeremiah Bentham, and puts the following illustration: "Were the Prince of Wales, the Archbishop of Canterbury and the Lord High Chancellor to be passing in the same coach, while a chimney-sweeper and a barrow-woman were in dispute about a half-penny worth of apples, and the chimney-sweeper and the barrow-woman were to see proper to call upon them for their evidence, could they refuse it? No! most certainly not!" (*Ex-parte Dement*, 53 Ala. 390).

It follows, that, in this case, the court could not fix a compensation to be paid to appellant, nor order his fee of $10.00 to be taxed as costs, nor order the party calling the witness to pay or secure to him compensation. It is claimed, however, that, in a civil suit, a witness, who is called to testify as an expert only, should not be punished for contempt in refusing to testify because no compensation is provided for his professional opinion other than ordinary witness fees. The power to compel the production of testimony, necessary to the decision of

issues involved in pending law suits, is one of the rights and powers, which is inherent in the very organization of courts of justice. Contempt of court is a disobedience to the rules or orders of the court, which interferes with the due administration of the law. (3 Am. & Eng. Ency. of Law, p. 777). The refusal of a witness to answer any question, which he may be lawfully required to answer, is a contempt of court, and, if he persists in his refusal, he may be punished accordingly. (*Samuel* v. *People*, 164 Ill. 379).

The grounds, upon which the right to such extra compensation on the part of expert witnesses has been sustained, have generally been three in number. The first ground is, that the time of the expert witness is more valuable than the time of ordinary men, and that, by attendance at court to give his testimony, such a witness meets with a loss of time. The better and more recent authorities, however, both in England and this country, now unite in the view, that the right to such extra compensation cannot properly rest upon loss of time as a basis. In *Lonergan* v. *Royal Exchange Assurance*, 7 Bing. 729, Chief Justice Tindal said: "There is no reason for assuming that the time of medical men and attorneys is more valuable than that of others, whose livelihood depends on their own exertions." In *Collins* v. *Godefroy*, 1 B. & A. 950, Lord Tenterden, C. J., said, that "a party can not maintain an action for compensation for loss of time in attending a trial as a witness." (*Moore* v. *Adam*, 5 M. & S. 156; *County Commissioners* v. *Lee, supra; Ex parte Dement, supra*).

Loss of time, as a ground for claiming extra compensation for services as a witness, applies as well to all ordinary witnesses as to expert witnesses. It is conceded, that, when any witness, whether he is an expert witness or not, is acquainted with any facts which bear upon the matter in controversy in a litigation, he is obliged to testify; and a distinction is drawn between the testimony of

an expert witness, who is acquainted with the facts about
which he testifies, and an expert witness, who is called
upon to give his opinion, in reply to a hypothetical ques-
tion, without any knowledge of facts.    Manifestly the
witness, who goes to court and testifies as to the facts of
which he knows, is subjected to a loss of his time, as
much as a witness, who goes there to testify as an expert
upon a mere matter of opinion.

The second ground, upon which the claim for such
extra compensation is based, is, that the skill and accu-
mulated knowledge of the expert are his property, and
that a man's property should not be taken without just
compensation.    Various definitions have been given of
property.    Webster defines property to be "the exclusive
right of possessing, enjoying and disposing of a thing."
This court has adopted this definition in *Chicago and West-
ern Indiana Railroad Co.* v. *Englewood Connecting Railway Co.*
115 Ill. 375.    Blackstone says: "Property consists in the
free use, enjoyment and disposal of one's acquisitions
without any control or diminution, save only by the laws
of the land."    (1 Blackstone's Com. 138).    It has also
been said, that property in its legal sense is not the thing
itself, but certain rights in and over the thing, those
rights being: 1, user; 2, exclusion; 3, disposition.    (Lewis
on Em. Dom. sec. 54).    This court has also said, in dis-
cussing the right to make and enforce contracts as being
included in the right to acquire property, that labor is
property, and that the laborer has the same right to sell
his labor, and to contract with reference thereto, as has
any other property owner.    (*Ritchie* v. *People*, 155 Ill. 98).
Labor is defined by Webster to be "physical toil or bodily
exertion," and also to be "hard muscular effort directed
to some useful end, as agriculture, manufactures and the
like."    He also defines labor to be "intellectual exertion;
mental effort, as the labor of compiling a history."    It is
not exactly accurate to say, that the mere abstract knowl-
edge, acquired in the study of a special employment, is

of itself property. It is the right to apply that knowledge to the accomplishment of a particular result, which constitutes property. For instance, if the appellant had been required to answer a question, put to him with a view of prescribing a remedy for the relief of Mrs. Purdy, the plaintiff in the suit, in which he was called to testify as a witness, then it might be said, if he was not offered any compensation, that he was deprived of a property right. But where a physician is asked a hypothetical question, and is called upon to give his opinion upon the facts stated in the hypothetical question while he is testifying as a witness in court, he is not thereby required to practice his healing art. He is merely making a statement, not for the purpose of effecting a cure, or relieving a patient, but for the purpose of enabling the court and the jury to understand correctly a case, which is before the court. There is no infringement here of a property right. It may be conceded, that, in a certain sense, the knowledge of the physician, acquired by special study, is property, but the question here is, not so much whether certain knowledge is property, as whether the requirement, that he shall answer a hypothetical question, is a taking of his property. Where he is required to make an application of his knowledge to a particular case, so as to secure a particular result, such as, for instance, the curing of a disease, or the healing of a wound, then he would undoubtedly be entitled to compensation. A physician or surgeon cannot be punished for a contempt for refusing to make a *post mortem* examination, unless paid therefor, nor can he be required to prepare himself in advance for testifying in court by making an examination, or performing an operation, or resorting to a certain amount of study, without being paid therefor. But when he is required to answer a hypothetical question, which involves a special knowledge peculiar to his calling, he is merely required to do what every good citizen is required to do in behalf of public peace and public order

and in promotion of the public good. Counsel for appellant state, that many of the cases, which have held that expert witnesses can be required to testify without being paid, are criminal cases, where the interest of the State and the interest of the public demand of the physician, that he should yield up something of his knowledge for the benefit of society at large. This position, however, is inconsistent with the contention, that, when an expert witness is required to testify without compensation, his property right is interfered with. A man's property cannot be taken from him by the State without compensation. It makes no difference whether it is to be taken for the good of the public, or for the benefit of a private individual, so far as the right to compensation is concerned. It is true, that private property cannot be condemned by the State for a private purpose. Private property can only be taken for a public purpose. But, in either case, it must be paid for. To concede, therefore, that, in a criminal prosecution conducted by the State, a physician may be required to testify without compensation because it is for the public good, is to concede, that his knowledge may be made use of by a court of justice without his being paid therefor. We conceive, however, that it can make no difference, whether the suit, in which the witness is called upon to testify, is a suit between private parties, or is a suit between the State and an alleged criminal. In either case, the object is to promote public justice and to aid the due administration of justice. It is just as important to the peace and good order of society, that private controversies should be settled upon correct proofs and in accordance with truthful testimony, as that criminals, who violate the laws of the State, should be punished. It is the duty of the ordinary witness, and of the expert witness, to testify as to facts within their knowledge, which bear upon the decision of controversies in the courts. Such duty devolves upon each as a citizen, and in view of the protection, which he

receives from the laws of the country, in the matter of his personal liberty, and in the matter of the protection of his property. This duty devolves, as much upon a physician who is required to testify as an expert witness in answer to hypothetical questions, as it does upon the ordinary witness, testifying to facts within his knowledge.

In *Vise* v. *County of Hamilton*, 19 Ill. 78, we held, that an attorney, appointed by the court to defend a criminal, could not recover for his services from the county, in which the prosecution was conducted; and that a court might compel an attorney, as one of its officers, to defend a prisoner, in case of his inability to employ counsel. It has never been supposed, that to require the performance of such professional services without compensation was the taking of property without just compensation.

If the precedent is once established, that expert witnesses must be paid reasonable compensation for their testimony, then it will not be long before such testimony will be offered to the highest bidder. The temptation will be to give opinions in favor of that party to the suit, who will pay the highest price. The testimony of expert witnesses will thus become partisan and one-sided. The theory, upon which such witnesses are required to testify in cases like this, is that they are *amici curiæ;* and that, testifying under the sanction of an oath, they do so, not with intent to take the part of either contestant in the suit, but with a view to arriving at the truth of the matter, and for the purpose of aiding the court to pronounce a correct judgment. In Redfield on the Law of Wills (p. 155, sec. 51, note 46) it is said: "It being purely a matter of conventional arrangement between professional experts and those who desire to employ them as witnesses, both in regard to their acting as such, and also their making preparations to enable them to give their testimony, it virtually places a price upon such testimony in the market, and its price is likely to range some-

168—13

what according to its ability to aid one or other of the parties litigant. The tendency of this is to render it partisan and one-sided, as a general thing."

Moreover, if a physician is to be allowed extra compensation as an expert witness, then men, pursuing other occupations which require special experience, will have the same right to demand extra fees. A banker will claim that he has earned extra compensation; a merchant will make the same claim; and so with men, engaged in other branches of business. It will be easy to say, in such cases, that the testimony called for is the result of special knowledge and acquired skill, and, therefore, should be paid for. Almost every law suit involves testimony, which is in the nature of opinion, in addition to testimony, which speaks of the mere facts within the knowledge of the witness. For instance, A sells B a certain quantity of wheat, and delivers the same, and sues for the price of the wheat. One witness testifies as to the contract, which he heard the parties make, another testifies to the delivery of the wheat which he saw delivered. These witnesses testify to actual facts heard and seen. But still another witness, who may know nothing about the facts, may yet be required to state the value of the wheat at the time of the contract, or at the time of the delivery; and he may be required to testify from his knowledge of the market prices of wheat, as given in the market quotations. Such a witness, however, as to value, and as to market prices, is not regarded as an expert witness, who is entitled to extra compensation.

Counsel for appellant also claim, as a third ground, that the accumulated knowledge and skill of the expert witness may be treated, if not as property, yet as "particular services." This contention is based upon the reasoning of the court in the case of *Buchman* v. *State*, 59 Ind. 1, which is the leading case upon this subject in opposition to the views here expressed. That case proceeds mainly upon the ground, that the services called

for are included within "particular services," as those words are used in the constitution of Indiana. Section 21 of the Indiana Bill of Rights provides, that "no man's particular services shall be demanded without just compensation." The Indiana court there held, that the services of an expert witness were "particular services," and that, therefore, under the constitution, they should be paid for. No such provision, as the one referred to as being contained in the constitution of Indiana, exists in the constitution of Illinois. Counsel for appellant say, however, that article 2 of the Ordinance of 1787 provided as follows: "No man shall be deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land; and should the public exigencies make it necessary, for the common preservation, to take any man's property, or to demand his particular services, full compensation shall be made for the same." It is to be here noted, that, by the use of the expression, "to take any man's property or to demand his particular services," the article seems to draw a distinction between property and particular services. Therefore, if the knowledge of the expert witness is included within the meaning of particular services, it cannot be regarded as property. However this may be, the Ordinance of 1787 is not in force in the State of Illinois. In the recent case of *People* v. *Thompson*, 155 Ill. 451, this court held, that the Ordinance of 1787, passed by the Congress of the Confederation for the government of the Northwest Territory, has no force in Illinois, except so far as its principles are embodied in the State constitution. In that case the whole subject is elaborately discussed, and many authorities are referred to sustaining the position there taken.

The decision in *Buchman* v. *State*, *supra*, was rendered by a divided court, consisting of five judges. Two of the judges, Chief Justice Biddle and Judge Niblack, dissented from the opinion in that case. The views of the dissenting judges are given in the case of *Dills* v. *State*, 59

Ind. 15; and the reasoning there is cogent and convincing; and the opinion adopts the views of the Supreme Court of Alabama, as announced in the case of *Ex parte Dement,* 53 Ala. 389. The latter case is the leading case in this country in favor of the views herein expressed; and its line of reasoning is substantially adopted in what has been here stated. That case holds, that the law allows no excuse for withholding evidence, which is relevant to the matters in question before its tribunals, and is not protected from disclosure by some principle of legal policy; that the administration of justice, being a source of mutual benefit to all the members of the community, each is under the obligation to aid in furthering it as a matter of public duty; and that "the same principle, which justifies the bringing of the mechanic from his workshop, the merchant from his store, and the broker from his exchange, or the lawyer from his engagements, to testify in regard to some matter which he has learned in the exercise of his art or profession, authorizes the summoning of a physician, or surgeon, or skilled apothecary, to testify to a like matter, when relevant to a cause pending for determination in a judicial tribunal; and that a physician, like any other person, may be called to testify, as an expert, in a judicial investigation, whether it be of a civil or criminal nature, without being paid for his testimony, as for a professional opinion; and that, upon a refusal so to testify, he is punishable as for a contempt." This decision of the Supreme Court of Alabama has been followed and adopted in the following cases: *State* v. *Teipner,* 36 Minn. 535; *Sumners* v. *State,* 5 Tex. Ct. App. 365; *County Commissioners* v. *Lee,* 3 Col. Ct. App. 177; *Flinn* v. *Prairie County,* 60 Ark. 204.

Upon this subject Rogers, in his able and exhaustive work on Expert Testimony, (sec. 188, p. 424, 2d ed.) says: "There can be no doubt that professional men are not entitled in this country to claim any additional compensation, when testifying as ordinary witnesses to facts

which happened to fall under their observation. But another question arises, when they are summoned to testify as to facts of science, with which they have become familiar by means of special study, or investigation, or to express opinions based upon the skill, acquired from special researches, as to conclusions, which ought to be drawn from certain given facts. Whether they can be compelled to testify in such cases, when no other compensation has been tendered than the usual fees of ordinary witnesses testifying to ordinary facts, is a point upon which the cases are not in harmony. In this country the cases are nearly balanced, and the question must be regarded as still an open one, although the weight of authority rather inclines to the theory, that the expert may be required to answer the question without additional compensation." As has already been stated, we prefer to adopt the views, announced by the Supreme Court of Alabama, and in the cases following the Alabama decision.

We cannot close this opinion without quoting, and endorsing, the following views, expressed by the Texas Court of Appeals in *Sumners* v. *State, supra:* "It is to be regretted, that a member of a profession, so distinguished for liberal culture and high sense of honor and duty, should refuse to testify in a case pending before the courts of his country, involving the life or liberty of a fellow-being, and the rightful administration of the laws of a common country. Doctor Spohn has doubtless been misled in taking the position he did by the misconceptions of certain writers on jurisprudence."

For the reasons above stated we have arrived at the conclusion, that the judgments below were correct. Accordingly, the judgments of the Appellate Court and of the circuit court are affirmed.          *Judgment affirmed.*

Mr. JUSTICE BOGGS, having passed upon the case in the Appellate Court, took no part in this decision.