78 463|
82 205|

78 463
s182s 9

## North Chicago Street Railroad Co. v. Gebhardt W. Zeiger.

1. STREET CAR COMPANIES—*Rights of Natural Persons in Streets.*— A person has the lawful right to drive his carriage in the tracks of a street car company. in the exercise by him of care to avoid an undue interference with the superior right of the company, and to avoid collisions while so driving. The law surrounds him with its protection against such a negligent operation by the company of its tracks as inevitably leads to his injury.

2. ORDINARY CARE—*Exercise of, a Question of Fact.*—Whether a person injured was in the exercise of due care, and whether a defendant was guilty of negligence, under all the circumstances, are questions of fact for the jury. under the evidence, and when found against the defendant, with the weight and preponderance of the evidence on the side of the findings, the verdict ought not to be disturbed.

3. DAMAGES—*Employment of Help in Business During Disability.*— Expense necessarily incurred by a plaintiff while disabled, in procuring competent help in his business to do the work which would have been performed by himself had he not been injured. is a proper subject of allowance for damages in suits of this character.

4. APPELLATE COURT PRACTICE—*When a Verdict Will Not Be Disturbed.*—An appellate tribunal will not disturb a verdict in a suit to recover for personal injuries merely because it would have assessed the damage at a less amount if it had been sitting as a jury.

5. VERDICTS—*When to Be Set Aside in Personal Injury Cases.*—It is only where a verdict in personal injury cases is so excessive as to justify an inference that it is the result of partiality, prejudice or passion, that the duty of an Appellate Court arises to set it aside.

6. WORDS AND PHRASES—*Use of the Words " May" and " Will" in Instructions.*—To tell a jury that if they find from the evidence the plaintiff has, by a preponderance of the evidence, proved the material allegations of his declaration their verdict " will " (instead of may) be in his favor, is to state the law, and can not by any fair understanding of words, be an invasion of the province of the jury. " May " could not, in such connection, properly be understood in the alternative, as may or may not, for, under the premise of the instruction, there is but one proper thing for the jury to do, and that is to find for the plaintiff. Had the word " may" been used instead of " will," it would have had to stand for and mean the same thing as " will," to be rightly understood by the jury.

7. WITNESS—*Physician Not Entitled to Fees in Advance When Testifying as an Expert.*—A physician subpœnaed and interrogated as an expert witness only, can not refuse to testify, in either a civil or criminal proceeding, upon the ground that no compensation greater than that allowed to ordinary witnesses has been paid or promised to him.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the March term, 1898. Affirmed. Opinion filed October 21, 1898.

EGBERT JAMIESON and JOHN A. ROSE, attorneys for appellant.

LACKNER & BUTZ, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

This is an action by Gebhardt W. Zeiger to recover damages for personal injuries, and for expenses to which he was put, together with damages for injuries to property, alleged to have been sustained by him by reason of the negligence of the North Chicago Street Railroad Company.

The declaration alleges that on the 29th day of December, A. D. 1894, while the plaintiff was riding with due care

in a carriage on North Clark street, near Belden avenue, in a southerly direction, one of the defendant's cable cars, south bound, negligently struck the carriage, thereby overturning it and throwing the plaintiff to the ground, causing the injuries complained of and putting him to the expenses alleged.

As appears from the evidence, on the evening in question, the plaintiff, with two ladies, was riding in a carriage drawn by one horse, south bound, on Clark street. While doing so the carriage was struck by a train of the defendant. Whether such collision was the result of the negligence of the defendant, while the plaintiff was in the exercise of ordinary care, is the main issue involved.

At the trial the jury found a verdict in favor of the plaintiff and assessed his damages at $5,000, and judgment having been entered on the verdict, the defendant brings the record to this court for review.

The carriage was a one-horse two-seated coupe. The plaintiff sat upon the front seat and was driving the horse; the ladies sat inside. There had been a previous fall of snow, and the sweepings from the car tracks and sidewalk had filled the space between the tracks and the sidewalk to such an extent as to make carriage driving there difficult and inconvenient.

When somewhere near the middle of the block, between Fullerton and Belden avenues, the approaching train was seen by the plaintiff, coming around the curve at Fullerton avenue, and about the same time the gripman saw the carriage ahead, and one of the defendant's witnesses testified that the block is more than 700 feet long. At all events, it seems as though the distance between the train and the carriage was an entirely safe one when they were respectively first observed by the gripman and the plaintiff. The plaintiff, however, continued to drive in the tracks until he reached a point about 175 feet, according to the testimony of the gripman, from Belden avenue, when he started to turn out. At that time the train, according to the gripman's testimony, was about fifty feet from the carriage and

"was going about three-fourths speed"—full speed being eight miles an hour.

Continuing our reference to the gripman's testimony, it appears that when the carriage began to turn out the train was slackened to "about one-fourth speed," and kept approaching the carriage, "getting nearer and nearer" to it, until the carriage was clear of the tracks, when the train moved ahead, and in passing the carriage the collision occurred. The theory of the defendant is that the carriage had cleared the track and was at a safe distance before the train was moved up to and partly past it, and that while the train was slowly moving along the plaintiff's horse became unmanageable and backed or plunged the carriage against the train, whereby the injuries resulted.

On the other hand the plaintiff's theory is that before the carriage had fully cleared the track, and while the left hind wheel was still in the track, the car, moving with negligent rapidity, caught the wheel and slued or shoved the carriage around until it was nearly turned about so as to make it face in a direction nearly opposite to that in which it was going, and finally upset it, thereby occasioning the alleged injuries.

A studious consideration of the record brings us to the conclusion that the plaintiff's theory is sustained by the preponderance and weight of evidence.

The plaintiff was driving out of the tracks to the right in a diagonal course, or as the gripman testified, "he turned off caticornered" to the right, and the night was "very cold," and "the snow made the ground frosty" and "slippery." Aside from, and in addition to the positive testimony of witnesses, common observation comes in aid of plaintiff's testimony, that under such conditions, when the left hind wheel was caught by the moving car the carriage would be slued around, and when the other hind wheel or body of the carriage came in contact with the car, the vehicle would shortly be upset. One of the effects, in such a case, would be to produce a scraping sound against the side of the car, such as was heard by the passengers, and

renders their testimony quite harmonious with. that of plaintiff and some of his witnesses.

It is much more consistent than the testimony of the gripman that the horse—which was one sued ordinarily in connection with a delivery wagon—became unmanageable and reared and plunged and backed, before the car touched the carriage.

The plaintiff had the lawful right to drive his carriage in the car tracks in the exercise by him of due care to avoid an undue interference with the superior right of the defendant, and to avoid a collision, and while so driving, the law surrounded him with its protection against such a negligent operation by the defendant of its tracks as would inevitably lead to the injury of the plaintiff. Booth on Street Railways, Section 316.

Whether the plaintiff was in the exercise of due care, and whether the defendant was guilty of negligence, under the circumstances, were questions of fact for the jury, under the evidence, and having been found against the defendant, with, as we have above said, the weight and preponderance of the evidence on the side of the findings, the verdict ought not to be disturbed.

But it is urged that the damages are excessive. The plaintiff's leg was broken just above the ankle joint, and it was a long time in healing—one of the surgeons in charge testifying that five casts were put on, and it was not until some time in May, more than four months after the injury, before they were discarded and a strong shoe with a steel brace substituted. It appears, also, that either crutches or a cane were required to be used for more than a year after the accident, and that there remains some enlargement and stiffening of the foot or ankle that interferes with the natural use of the leg, especially in going up or down stairs, and that such lack of flexibility is likely to be permanent. The plaintiff was forty-eight years old at the time of receiving the injury, which was more than two years before the trial.

It cost the plaintiff $104 to repair the carriage, and the

surgeons were paid by him $450, and there was some other small expense, about none of which matters was there dispute. The plaintiff was a wholesale butcher and employed twenty-five men. The first time he was able to drive down to his place of business was April 4th or 5th, a little over three months after the accident, and it was necessary for him to employ a superintendent for five months from the time of the accident, which he did at a cost of $1,000, for salary paid.

The argument of defendant's counsel against the admissibility of the testimony relative to what the plaintiff paid for a superintendent, and the necessity for employing a superintendent, is based wholly upon the original record filed in this court, and not upon the full record made in the Circuit Court. By a supplemental record brought here after defendant's brief was filed, there was brought up an additional count to the declaration, which, had it been here in the first instance, would have doubtless spared the point that there was no basis made by the pleadings for such proof. Such additional count specially alleged plaintiff's particular damages in such respect, and the facts upon which they were claimed, and was a good basis for the evidence.

The expense necessarily incurred by a plaintiff so disabled, in procuring competent help in his business to do the work which would have been performed by himself had he not been disabled, was a proper subject for allowance of damages in this character of suit. Ashcraft v. Chapman, 38 Conn. 230.

We thus have left about thirty-five hundred dollars as the amount of compensation for the injury to plaintiff's person. Whether that amount is right or not, is not susceptible of exact ascertainment. An appellate tribunal will not disturb a verdict, in a suit to recover for personal injuries, merely because it would have assessed the damages at a less amount if it had been sitting as a jury. It is only where the verdict in such cases is so out of the way as to justify an inference that it is the result of partiality, preju-

dice or passion, that the duty of an Appellate Court arises to set aside the verdict.

But in this record there is nothing to be found to justify such an inference. The case seems to have been fairly and deliberately tried, and full consideration given to every defense the defendant interposed; and though the verdict is full in amount, it can not be said to be palpably wrong.

Error is assigned, and argued, because of the giving of two of plaintiff's instructions, in that, as it is said, one of them, by using the word "will," instead of may, practically directs the jury to find a verdict for the plaintiff in case they find that he has proved the material allegations of his declaration by a preponderance of the evidence; and in the other, it in substance tells the jury it is their " duty," in case they find the defendant guilty, to determine from the evidence the amount of the damages, if any, which, under the evidence, he is entitled to recover; and if the jury find, from a preponderance of the evidence, that plaintiff is entitled to recover substantial damages, they " will" (instead of may) fix the amount thereof, etc.

In other words, applicable to each instruction, it is argued that the words "will" and "duty," as there employed, were mandatory and coercive upon the jury, and tended to deprive the jury of their freedom of action in the matter, and were, as used, an invasion by the court of the province of the jury.

To tell a jury that if they find from the evidence the plaintiff has, by a preponderance of the evidence, proved the material allegations of his declaration, their verdict " will " (instead of may) be in his favor, is to state the law, and can not, by any fair understanding of words, be an invasion of the province of the jury. "May" could not, in such a connection, properly be understood in the alternative, as may or may not, for, under the premise of the instruction, there was but one proper thing for the jury to do, and that was to find for the plaintiff. Had the word may been used instead of " will," it would have had to stand for and mean the same thing as " will," to be rightly understood by the jury.

·Very much the same reasoning applies to the use of the words " duty " and " will," in the connection in which they were used in the second instruction, and it is unnecessary to elaborate upon it. The cases cited and relied upon by appellant in this connection are not, as we understand them, parallel to this one, and our holding is in no sense inconsistent with them, but, on the other hand, is in harmony with them.

While it is exceedingly important and vitally essential to the preservation of the right of trial by jury, that the ·jury's province should not be usurped by the trial judge, it is no less important and essential that the functions of the judge should be preserved and exercised, and to instruct the jury as to what the law demands of them when all the facts and conditions precedent to the demand of the law have been rightfully found by the jury to exist, can, in our view, never be error.

For illustration, we refer to C., B. & Q. R. R. Co. v. Payne, 59 Ill. 534; City of Aurora v. Hillman, 90 Ill. 61, p. 69; and there are many others.

Neither was there error in the refusal of defendant's instruction numbered twenty-eight, that the law will not require an expert witness (a physician and surgeon in this case) to testify in a case unless he is paid the usual fees of expert witnesses of his class and character, etc.

This question has lately been settled by our Supreme Court in Dixon v. The People, 168 Ill. 179, holding that a physician subpœnaed and interrogated as an expert witness only, can not refuse to testify, in either a civil or criminal suit, upon the ground that no compensation greater than that allowed to ordinary witnesses has been paid or · promised to him.

We perceive no reversible error upon the record, and the judgment of the Circuit Court is affirmed.