(May 31, 1913.)

ELTON OSBORN, an Infant, by CHAS. S. OSBORN, His Guardian ad Litem, Respondent, v. FRANK T. CAREY, Appellant.

[132 Pac. 967.]

PHYSICIAN—MALPRACTICE—COMPLAINT—UNCERTAINTY—NOT SPECIFIC—DEMURRER—CROSS-EXAMINATION—ADVERSE PARTY—NEGLIGENCE—EVIDENCE—IMPROPER DIAGNOSIS—IMPROPER TREATMENT—EXPERT EVIDENCE—HISTORY OF THE CASE—HYPOTHETICAL QUESTION—INSTRUCTIONS.

1. In an action to recover damages for negligence and carelessness in the diagnosis and treatment of what is alleged to be a "well-known disease," without naming the disease, or without alleging wherein the treatment was wrong, the complaint is uncertain and not specific, and subject to demurrer on the ground of uncertainty.

2. A complaint which does not specifically allege the things concerning which negligence is imputed is open to demurrer for uncertainty.

3. Where a physician is called as an expert witness to give his opinion based upon assumed facts and the "history of the case," which history was material to such opinion and was not within the personal knowledge of the expert witness, but had been obtained from conversation with others, such opinion has no value as proof.

4. The "history of the case" should be put in evidence as any other fact, and then the jury should give such weight to the expert opinion as it deserves; but if the "history of the case" is not introduced in evidence, then the expert opinion thereon should be given no weight.

5. The jury should determine whether or not the facts upon which the hypothetical question is based have been proved to their satisfaction, and if the witness states that the history of the case was given him by other persons, and does not state what that history was, such expert opinion is not entitled to any weight or value as evidence.

6. *Held,* that the evidence is not sufficient to support the verdict.

7. Where a witness on cross-examination is examined as to prior inconsistent statements which are in writing, the writing must first be exhibited to the witness before he is required to answer.

8. *Held,* that the giving of a certain instruction was not error.

APPEAL from the District Court of the Fourth Judicial District for Lincoln County. Hon. Edward A. Walters, Judge.

Action to recover damages on the ground of carelessness and negligence in diagnosing and treating a certain disease. Judgment for plaintiff. *Reversed.*

Bowen & Porter, W. P. Guthrie and Frank T. Disney, for Appellant.

In overruling defendant's demurrer the court placed the defendant at a great disadvantage. He was entitled to know just what was the disease from which it was contended plaintiff was suffering. He was certainly entitled to understand the nature of plaintiff's proof. Under the very general allegation of the complaint, plaintiff could prove the disease to be a hundred different ailments.

Our demurrer is likewise well taken on another ground. Even though the ailment were osteomyelitis; even though the defendant treated it as blood poisoning, still the nature of the disease might be such that in the opinion of physicians they should be treated alike, and if such were so, defendant would not be liable for using such treatment even though it did not produce a good result. (*Tomer v. Aiken,* 126 Iowa, 114, 101 N. W. 769; *Jackson v. Burnham,* 20 Colo. 532, 39 Pac. 577; *Hawley v. Williams,* 90 Ind. 160.)

Where a witness on cross-examination is to be examined as to prior inconsistent statements which are in writing, the writing must first be exhibited to the witness. (Am. & Eng. Ency. of Law, 1062, 1063, 1088, 1096; Elliott on Evidence, secs. 971, 973; Greenleaf on Evidence, secs. 450, 450b; Stephen's Dig., p. 592; Wigmore on Evidence, secs. 920, 969.)

"The hypothetical question should include substantially all the facts relating to the subject upon which the opinion is sought." (Kennedy on Evidence, p. 30.)

An opinion based upon assumed facts not proven or in evidence is entitled to no weight. (Wigmore on Evidence, sec. 672; *Forsyth v. Doolittle,* 120 U. S. 77, 7 Sup. Ct. 408, 30 L.

ed. 586; *Hall v. Rankin,* 87 Iowa, 261, 54 N. W. 217; Lawson on Expert Opinion Evidence, pp. 152, 153; *Aetna Life Ins. Co. v. Ward,* 140 U. S. 76, 11 Sup. Ct. 720, 35 L. ed. 371; *Smart v. Kansas City,* 91 Mo. App. 586; 5 Ency. of Evidence, pp. 645, 646; *Central R. & Bldg. Co. v. Maltsby,* 90 Ga. 630, 16 S. E. 953; *In re Will of Norman,* 72 Iowa, 84, 33 N. W. 374; *Howe v. Richards,* 112 Iowa, 220, 83 N. W. 909; *Roark v. Greeno,* 61 Kan. 299, 59 Pac. 655; *Lanford v. Jones,* 18 Or. 307, 22 Pac. 1064; note to *Hull v. St. Louis,* 42 L. R. A. 761; *Stone v. Chicago etc. Ry. Co.,* 66 Mich. 76, 33 N. W. 24; Brickwood's Sackett on Instructions to Juries, sec. 382; *People v. Foley,* 64 Mich. 148, 31 N. W. 94.)

Edward K. Walsh and Sutphen & Sutphen, for Respondent.

We submit that the complaint contained all the averments necessary or usual in such cases. The pleaders studiously followed the suggestions to be found in the forms of complaints in similar malpractice actions as given in 3 Sutherland on Code Pleading, sec. 5226; Kinkead, Code Pleading, sec. 789.

It is never necessary to include in a hypothetical question all the facts previously proven. (17 Cyc. 242.)

What facts a hypothetical question must cover are determined by the sound discretion of the trial judge. (*Kelly v. Perrault,* 5 Ida. 221, 48 Pac. 45; *Russ v. Wabash Western R. R. Co.,* 112 Mo. 45, 20 S. W. 472, 18 L. R. A. 823; 17 Cyc. 244.)

If the verdict is supported by substantial evidence, or if the testimony is materially conflicting, the judgment will not be disturbed. (Civ. Code, sec. 4824; *Church v. Van Housen,* 15 Ida. 249, 97 Pac. 36.)

The manner by which it may be ascertained whether a medical treatment or surgical operation has been skillfully done is by examination, on information derived from the patient, or from facts proved on trial, or by combinations of parts thereof, or both. (McClelland, Civil Malpractice, 303; *Walsh v. Sayre,* note 37 L. R. A., N. S., 738, subd. X;

*Barber v. Merriam,* 11 Allen (Mass.), 322; Rogers on Expert Testimony, sec. 48.)

SULLIVAN, J.—This is an action brought by the plaintiff, an infant of about the age of twelve years, by his guardian *ad litem,* against the respondent, a physician practicing his profession at Gooding, Lincoln county, Idaho, for damages for an alleged act of malpractice in mistakenly diagnosing and treating an ailment of the leg. Said infant will hereafter be referred to as the respondent.

It is alleged in the complaint that on or about the 14th of November, 1911, the respondent was afflicted with a disease of his right leg and that appellant was called to attend and treat him for the disease, and that he carelessly failed to make a proper examination of the respondent, such as a physician of ordinary skill would have done, and pronounced the disease to be blood poisoning, when in fact it was a disease of the leg "at the right tibia," which disease and ailment has well known and peculiar signs and symptoms which an ordinary physician would detect, and that he continued negligently and unskillfully to treat the respondent for blood poisoning until about March 10, 1912. It is also alleged that the respondent suffered damage by injury to his health and constitution, great mental anguish and physical pain, and by being permanently deformed, crippled and weakened in body, to his damage in the sum of $5,000.

To this complaint a general and special demurrer was filed and overruled by the court. The answer of the defendant admitted the employment but denied the various acts and charges of negligence set forth in the complaint. The case was tried by the court with a jury, who rendered a verdict in favor of the respondent in the sum of $4,000. This appeal is from that judgment.

The action of the court in overruling the demurrer, the ruling of the court in the admission and rejection of certain evidence, and the giving of a certain instruction are assigned as error.

(1) First we will consider the assignment of error in regard to the action of the court in overruling the demurrer.

It is alleged in the complaint that the respondent was afflicted with a "disease of the leg at the (right) tibia," and that "said disease or ailment has well known, peculiar signs and symptoms." One ground of said demurrer was that said allegation was uncertain, in that it does not appear from the complaint what was the name or nature of the alleged disease or what were the signs or symptoms of said disease which it is alleged are well known and peculiar. It is contended that in overruling said demurrer and not requiring the respondent to allege the name of the disease and the symptoms referred to, the appellant was placed at a great disadvantage on the trial, as he was entitled to know just what disease it was with which it is alleged the respondent was suffering; that he was entitled to be advised by the complaint with which one of the hundreds of well-known, different ailments or diseases it was claimed respondent was suffering, so as to be able to have his evidence ready in presenting his defense.

In this class of cases, in order to enable counsel to properly prepare a case for trial, it is usually necessary for them to make considerable study of the ailment or disease with which it is claimed a plaintiff was suffering, in order that they may properly defend their client. The danger to the defendant in such a case on a general allegation of a disease claimed to be a "well-known disease," without naming it, or giving its signs and symptoms, is certainly increased in a malpractice action over the ordinary action, and it would seem only fair to the defendant that the plaintiff should be required to name the disease with which he was afflicted. The defendant could not know prior to the trial for a certainty with just what disease the plaintiff would claim he was afflicted. Had he known, he might have made a better defense. The record shows that appellant had pronounced the disease with which respondent was afflicted as "blood poisoning," and it is claimed that that is a proper term to be applied to the disease which it is claimed the respondent had, its scientific

name being "osteomyelitis," which disease is "blood poisoning" producing a necrosis of the bone.

The complaint is also uncertain in that it cannot be determined from its allegations whether the plaintiff claims negligence in the treatment of a disease correctly .diagnosed, or whether he relied upon the fact that it was the wrong treatment for osteomyelitis. The defendant ought to have been advised by the allegations of the complaint in regard to that matter. If we assume that the exact charge of negligence as to the treatment related only to the mistake of the disease and that the appellant had wrongfully diagnosed it as "blood poisoning," and treated the ailment on the wrong theory as to the nature of the disease, the defendant would not necessarily be liable even though the treatment did not produce good results, for it must appear from the allegations of the complaint that the treatment was not proper from the standpoint of the consensus of opinion among physicians and surgeons of ordinary skill and learning in the profession in the locality wherein defendant practiced. In other words, even though the ailment were osteomyelitis; even though defendant treated it as blood poisoning, still the nature of the disease might be such that in the opinion of physicians they should be treated alike, and if that were so, defendant would not be liable for using such treatment even though it did not produce good results. (See *Tomer v. Aiken,* 126 Iowa, 114, 101 N. W. 769; *Jackson v. Burnham,* 20 Colo. 532, 39 Pac. 577.) In 30 Cyc. 1575, the author says: "If the physician follows the established practice, and no gross error is shown, he is not liable for injuries caused by the treatment." It ought to appear from the allegations of the complaint regarding treatment following alleged mistaken diagnosis that the treatment given was not proper for the real disease, judged, of course, by the standards above stated.

In *Hawley v. Williams,* 90 Ind. 160, it is held that "a complaint against a physician for negligence in treating a patient should· allege specifically the things concerning which negligence is imputed, and, if it fail in this, it is error to overrule a motion to make it more specific." And as stated in 30 Cyc.

1584, "No presumption of negligence or want of skill can arise from the fact that defendant failed to effect a cure."

In this class of cases the allegations of the complaint ought to be sufficiently specific to inform the defendant of the facts that he must meet by his defense, and the complaint ought to allege specifically the things concerning which the negligence is charged and the name of the disease with which the plaintiff was afflicted, since it is alleged that it was a "well-known" disease. It is alleged in effect in the complaint that the appellant, on account of carelessness and negligence, failed to discover the true disease with which respondent was afflicted, and it certainly was only fair to the appellant, if the disease was well known and had a name, that the name of the disease be alleged. (3 Sutherland, Code Pleading, secs. 5226, 5227.)

(2) As to the insufficiency of the evidence, it is contended by counsel for appellant that it was incumbent upon the plaintiff to establish three things before he could recover: (1) That the patient had osteomyelitis at the time defendant treated him; (2) that the defendant's mistaken diagnosis was due to negligence on his part, that is, lack of skill or care; (3) that the treatment given the patient, judged by the proper legal standards, was improper and, of course, that the injury resulted from such improper treatment.

It is contended that the only evidence purporting or tending to show that the plaintiff had osteomyelitis during the time he was treated by the defendant was the opinions of physicians as experts, and that such opinions were based upon assumed facts and a so-called "history of the case," which history was material to such opinions, as it was not within the personal knowledge of the expert witnesses, and that such assumed facts were not themselves in evidence, and no proof was offered to show that such assumed facts were true. These things being true, it is contended that the opinions were valueless and have no weight as evidence.

It appears from the evidence that appellant ceased treating the respondent on or about February 10, 1912; that is, he did not see him after that time; that about thirty days thereafter, on March 12, 1912, another physician was called

and he testified that respondent was suffering at that time from osteomyelitis in the tibia, and that said disease originated as an inflammation of the marrow bone. It also appears from the evidence that the disease osteomyelitis could have developed between February 10 and March 12, 1912. While the expert testimony might indicate that the disease had been of longer standing than thirty days, such expert testimony was based on the "history of the case" as the experts had gotten it from the plaintiff, his father and other persons. There is nothing in the record to show what that history was. In other words, the history of the case was not put in evidence. It was incumbent upon the plaintiff to produce competent evidence on the trial to warrant the jury in finding that the plaintiff really had osteomyelitis at the time he was treated by the appellant. There is evidence in the record to show that plaintiff had osteomyelitis thirty days after appellant's last visit. But it is contended there is no evidence in the record to show that during the time appellant treated the respondent he was afflicted with such disease. The existence of the disease on March 12th would not prove of itself its existence thirty days prior thereto, and the expert witnesses based their testimony of the existence of the disease at the time the plaintiff was being treated by the appellant on a "history of the case," which was not put in evidence. But it is contended by counsel for respondent that this objection is one which goes to the competency of the evidence, and that question should have been raised in the court below by appropriate objection to the evidence, when the missing facts and circumstances, if they were material, could have been supplied. Said objection goes to the weight of the evidence and as to its value as proof and not to its competency. If the case depends upon the opinion of the expert and the truth of the opinion depends upon the existence of certain facts and such facts are not shown, the opinion can have no value or weight as proof.

The history of the case was given to Doctors Cromwell and Zeller by the parents and friends of the plaintiff and was not put in evidence, and the defendant could not rebut it and

show that the history as given to them was not a true history of the case, provided he desired to do so. The opinions of the plaintiff's experts being thus based upon assumed facts not in evidence, such opinions have no value as proof. On the other hand, the opinions of the defendant's experts were based upon assumed facts, duly proven and not contradicted, and on those assumed facts which were placed in evidence, Dr. Alexander and other physicians were qualified to testify, and did testify, that the disease the plaintiff had when under the care of the appellant was septicemia or blood poisoning. (See Wigmore on Evidence, sec. 672.) The author cites many authorities under that section, and among them *Dickenson v. Inhabitants of Fitchburg,* 13 Gray, 546, wherein Chief Justice Shaw said:

"The jury will then be instructed, if the truth of any such fact is contested, first to consider whether the fact on which such opinion rests is proved to their satisfaction; if it is, then to give such weight to the opinion resting on it as it deserved; but if the fact is not proved by the evidence, then to give the opinion no weight."

In *Aetna Life Ins. Co. v. Ward,* 140 U. S. 76, 11 Sup. Ct. 720, 35 L. ed. 371, the trial court gave the following instruction:

"The first part of that charge is that these opinions are founded upon testimony giving what is called the 'history of the case,' and you must determine whether that history is true. You must determine whether the facts upon which the hypothetical questions are based have been proved or not to your satisfaction."

That instruction was approved by the supreme court of the United States.

How could the jury determine, in the case at bar, whether the so-called history of the case as given to Doctors Cromwell and Zeller was true when such history was not put in evidence? Of course they could not do so. When an opinion is based upon an assumed state of facts, such assumed facts should be put in evidence, and if they are not, the opinion based thereon is entitled to no weight or value as evidence.

Therefore the expert opinions of Doctors Cromwell and Zeller, based on a history of the case, were not entitled to any weight. Taking out the expert evidence of Doctors Cromwell and Zeller as to the existence of said disease at the time the plaintiff was under the care of defendant, there is no evidence showing that the plaintiff was afflicted with osteomyelitis prior to appellant's last visit to him.

There is not sufficient evidence to show that the appellant carelessly and negligently treated said disease, or that the disease with which the plaintiff was afflicted at the time he was treated by the appellant was not blood poisoning or septicemia.

It further appears from the record that osteomyelitis might develop from the septic condition due to septicemia, and that the presence of osteomyelitis on March 12th was not proof positive of its existence in the leg of plaintiff previous to appellant's last visit. In order to recover in this case, the plaintiff must establish the existence of that disease in the plaintiff during the time he was under the care and treatment of appellant, the amount of damages sustained by plaintiff, as well as other facts.

Under the second assignment of error it is contended that the court erred in compelling the defendant to answer the following question over the objection of his counsel: "Don't you know you have an answer on file in which you say you never treated that boy for blood poisoning?" It appears from the record that the appellant was called by the plaintiff for cross-examination under a law enacted in 1909, Sess. Laws, p. 334, under which an adverse party may be called as a witness and examined as if he were on cross-examination. The evident purpose of said question was to affect the credibility of the witness by showing that he had made a prior statement inconsistent with his present testimony given on the trial. If it was not for that purpose, it was entirely immaterial, as the witness had testified that the patient was suffering from blood poisoning, and this was in harmony with the allegations of the complaint as to defendant's diagnosis of the case. The rule is well established that where a witness

on cross-examination is to be examined as to prior inconsistent statements which are in writing, the writing must be first exhibited to the witness. The answer referred to was evidently drawn by the attorney and the statement referred to inserted in that answer through mistake, and said answer verified by the attorney and not by the defendant, and if the answer had been shown to the witness, he no doubt could have fully explained the matter and not been placed before the jury as swearing to one thing in an answer and contradicting it in his oral testimony. A court in the trial of a case of this kind ought not to permit irrelevant examination which has the tendency to create bias or prejudice.

Under the third assignment of error it appears that the appellant, when testifying under the provisions of Session Laws of 1909, *supra*, was asked the following hypothetical question: "If they were forming on the path of least resistance, can you explain why they would stop at the right tibia and make red spots and cause you to make an incision?" This question was asked for the purpose of advancing plaintiff's case in chief and calls for an expert opinion by the witness. The statute was not intended to enable an adverse party to call an opposing party as an expert and seek to establish his side of the case by such expert evidence. Where a witness is called under the provisions of that act, he may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses, but it is contrary to the purpose and reason of that statute to allow the plaintiff to make out his case in chief by expert opinion evidence secured from the defendant on cross-examination. If the plaintiff desires to make his case by expert evidence from the defendant himself, he must call him as his own witness but is not permitted to do so under the provisions of that statute.

(3) The giving of the following instruction is assigned as error:

"You are instructed that if the defendant did possess the skill and learning which ordinarily characterize his profession and failed to exercise it in this case, and in his treatment of

the plaintiff was careless and negligent, and the plaintiff was injured in consequence thereof, the defendant would be liable for such damages as the plaintiff has sustained.'' When that instruction is considered with the others given, we do not think there was any error in the court's giving it.

For the reasons above given, the judgment must be reversed and a new trial granted, and it is so ordered, with costs in favor of the appellant.

Ailshie, C. J., and Stewart, J., concur.