**RUSH, Appellant, v. AKRON GENERAL HOSPITAL, Appellee.**

Ohio Appeals, Ninth District, Summit County.

No. 4713.  Decided December 31, 1957.

Myers, Myers & Myers, for appellant.
Slabaugh, Walker, Pflueger, Roderick & Myers, for appellee.

## OPINION

By DOYLE, J.

Plaintiff was injured in the course of an altercation with another person by being pushed through a glass door, which event caused broken

glass to lacerate his right shoulder, right upper arm, and to make a small puncture wound on his right chest.

Thereupon he was taken by ambulance to the emergency room of the defendant hospital and was given treatment by an intern-doctor in the employ of the hospital.

In an action in tort against the hospital, based upon claimed vicarious liability for injury and damage to the plaintiff, it was pleaded that "defendant was negligent in that its servant, said doctor, closed plaintiff's wounds without probing them and without thoroughly examining them, thereby leaving, in the fleshy part of the back of plaintiff's right shoulder just above the arm pit, two pieces of glass, one piece being three and one-quarter inches long by three-quarters inch wide at its greatest width, and the other of a substantially smaller size."

The amended petition continued by stating that:

"8. As a direct and proximate result of the negligence of defendant and defendant's servant, plaintiff was injured as follows: the said pieces of glass, which defendant's servant failed to remove, greatly pained plaintiff in any movement of his right arm and shoulder; said pain interfered with the performance of his job as a v-belt cutter; said glass and pain kept him from sleeping on his right side and awakened him whenever he rolled onto his right side while asleep; said imbedded glass was removed by a second operation September 27, 1955, under local anaesthetic for forty-five minutes, which was a very painful experience and produced a new scar on the back of plaintiff's right arm."

The amended answer of the defendant admitted that on July 5, 1955, the plaintiff "received emergency treatment in the out-patient emergency department of the defendant's hospital," but denied all other allegations in the petition.

Upon the issues joined, trial was held; and, at the conclusion thereof, the jury rendered its verdict in the amount of $2500, and answered properly-submitted interrogatories as follows:

1. "Question: Do you find that the defendant was negligent? Answer: Yes.

2. "Question: If your answer to interrogatory No. 1 is 'Yes' state in what respect or respects the defendant was negligent. Answer: The defendant was negligent to the extent that the wound was sufficiently large to warrant calling the senior doctor in charge to examine the patient."

Following the entry of judgment upon the verdict, the court, upon motion of the defendant, entered final judgment notwithstanding the verdict for the defendant.

From this judgment plaintiff has appealed, and assigns the following claimed errors:

"1. The trial court erred in sustaining defendant's motion for judgment notwithstanding the verdict.

"2. The trial court erred in refusing to charge the jury that violation of §§4731.34 and 4731.41 R. C., constituted negligence per se."

It is first observed that, in 1956, the Supreme Court of this state reversed a principle of law which it had followed for almost fifty years, that a charitable hospital—a corporation not for profit—is not liable for

injuries to its patients resulting from the negligence of its servants, unless it is shown that it failed to use due care in the selection or retention of the servants who caused the injury. The rule now existing is stated in paragraph 1 of the syllabus of **Avellone v. St. John's Hospital, 165 Oh St 467,** and is:

"1. A corporation not for profit, which has as its purpose the maintenance and operation of a hospital, is, under the doctrine of respondeat superior, liable for the torts of its servants. (**Taylor, Admr., v. Protestant Hospital Assn., 85 Oh St 90, Rudy v. Lakeside Hospital, 115 Oh St 539,** and **paragraph one** and **two** of the syllabus of **Lakeside Hospital v. Kovar, Admr., 131 Oh St 333,** overruled.)"

The pleadings state a cause of action against the hospital under the present law.

Undisputed evidence relates the status of the intern against whom the complaint is directed. He was a medical college graduate and licensed to practice medicine in the state of Wisconsin, following the successful passing of examinations. He was not licensed to practice medicine in the state of Ohio, but was employed by the defendant hospital in the capacity of an intern, and, at the time of the events giving rise to the instant case, was on "twenty-four hour tour of duty" to serve patients coming to or brought to the hospital's emergency room.

In the light of statutes regulating the practice of medicine in this state, there is nothing sinister in the employment by hospitals of interns to render emergency treatment to any patient of the hospital, whether a charitable patient or not.

Sec. 4731.36 R. C., in part, specifically provides that:

"Secs. 4731.01 to 4731.47, inclusive, R. C., shall not prohibit service in case of emergency * * *."

But over and beyond this, the employment of interns and residents by hospitals has been an accepted feature of medical education for many years, not only in this state, but throughout the various states of the union; and the fact that a modest compensation is sometimes given them by the hospital for their support while in training, and the further fact that the relationship of master and servant exists, do not create grounds for holding that the hospital is practicing medicine. The hospital, rather than practicing medicine, is in the business of rendering a service to the community and to the intern himself. The intern's chief and primary reward is the instruction which he receives in medical and surgical practice from the hospital staff physicians when assisting or watching them in the treatment of all types of cases, and in the temporary care of emergency cases. Interns do not hold themselves out to practice medicine, nor do they have patients of their own.

It is accepted doctrine in this state that "A surgeon and physician. employed to treat a case professionally, is under an obligation, which the law implies from the employment, to exercise the average degree of skill, care and diligence exercised by members of the same profession. practicing in the same or a similar locality, in the light of the present state of medical and surgical science; and that he will indemnify the patient against any injurious consequences which may result

from his want of ordinary skill, care and attention in the execution of his employment." **Gillette v. Tucker, 67 Oh St 106.**

Again, in **Ault v. Hall, 119 Oh St 422,** it is stated:

"7. In an action against a surgeon for malpractice the jury should be instructed that the plaintiff must show by a preponderance of the evidence and the jury must find that the defendant in the performance of his service either did some particular thing or things that physicians and surgeons of ordinary skill, care and diligence would not have done under the same or similar circumstances, or that the defendant failed or omitted to do some particular thing or things which physicians and surgeons of ordinary skill, care and diligence would have done under the same or similar circumstances."

The above cases set the standard of conduct for the professional physician and surgeon. In this field of inquiry, expert testimony is required to make a case against the doctor, unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. Juries composed of laymen are not familiar with the science of medicine, ailments of the body, nor with the techniques of surgery, and are incompetent generally to determine the standard of care or to evaluate the physician's conduct. Testimony of experts is therefore generally required to guide the jury and assist it in understanding the significance of the facts, as well as to enable it to reach an intelligent conclusion. See cases cited under "Problems of Proof," 35 Minnesota Law Rev. 191, et seq.

In an examination of the evidence in the instant case, we find the statement of a physician and surgeon of high standing, who testified to the standard of conduct employed by members of his profession practicing in this community in cases of this character. The evidence relating to the ministrations of the intern shows no deviation from the standard of care, diligence or skill employed in the examination and treatment of such cases by competent physicians and surgeons practicing in this community.

However, this standard of skill is not absolute in all cases. It would be unreasonable to exact from an intern, doing emergency work in a hospital, that high degree of skill which is impliedly possessed by a physician and surgeon in the general practice of his profession, with an extensive and constant practice in hospitals and the community.

What is required in the case of an intern is that he shall possess such skill and use such care and diligence in the handling of emergency cases as capable medical college graduates serving hospitals as interns ordinarily possess under similar circumstances, having regard to the same or similar localities, and the opportunities they afford for keeping abreast with the advances in medical and surgical knowledge and science.

The court, in its charge to the jury on the question of vicarious liability of the hospital, gave, in substance, the standard required of the intern. It is here noted, however, that there is no evidence in the record showing the standard required of an intern. The standard shown in the evidence is the standard required of physicians and surgeons practicing in this locality. Be that as it may, as has been heretofore noted, the evidence does not show the intern to have exer-

cised any lesser degree of skill, care, and diligence than that required of a general practitioner working in this community; and, as a consequence thereof, malpractice was not proved, even if the intern were held to the higher standard of an experienced physician and surgeon.

It is said that an element of negligence arises from the fact that the hospital employed an intern who was not licensed to practice professionally in this state. This statement has no force in the instant case. "The great weight of authority supports the view that * * * [a] failure to procure a license does not in itself give rise to any right of recovery by * * * [a] plaintiff. * * * To maintain such an action, the plaintiff must show that the result complained of was due to negligence or unskillful treatment." Willett v. Rowekamp, 134 Oh St 285, at pp. 286-287. See also Brown v. Shyne, 242 N. Y. 176; Hardy v. Dahl, 210 N. C. 530.

There has heretofore in this opinion been set out the allegations of negligence made by the pleadings. During the trial, evidence was introduced in an attempt to prove negligence of the intern in other respects than those matters pleaded, in that the said intern failed to notify the resident surgeon of the extent of the injury, in claimed violation of a hospital rule. In fact the jury, in answering the interrogatories, found the intern to have been negligent only in that respect. No request was made to again amend the pleadings at any stage of the trial. It therefore appears that the jury, while finding no evidence of negligence under the allegations in the pleadings (Masters v. New York Central Rd. Co., 147 Oh St 293), did find the intern to have been negligent as to a matter not pleaded.

Assuming, but not deciding, that this issue of negligence was before the jury, nevertheless there is nothing in the evidence to show that it was a proximate cause of the damage. In fact, the evidence shows that, two days after the emergency treatment, the senior staff member of the hospital, a surgeon of eminent standing in the community and responsible for supervising the work of the interns, examined the plaintiff and found nothing to indicate glass in the wound.

It is the judgment of the members of this court that the plaintiff's claims are not supported by the necessary proof. We subscribe to the statement of the trial court that:

"No evidence * * * was offered as to any standard of practice obtaining in this community that the defendant hospital, and its intern * * * in particular, did not meet in rendering * * * [the] service. Further, if it may be assumed that * * * [the intern] should have done something in addition to what he did do there, no probative evidence was offered that it would have disclosed the presence of the glass. Also, the finding of the jury that the hospital was negligent by failing to have its resident surgeon examine the plaintiff, is outside the negligence specified by the plaintiff in his claims in the amended petition."

In the light of the evidence, we conclude that the errors claimed are not established as prejudicial, and as a consequence the judgment must be affirmed.

Judgment affirmed.

HUNSICKER, PJ, STEVENS, J, concur.