549 A.2d 210

**Angelo JISTARRI, Administrator of the Estate of Adeline Jistarri, Deceased, Appellant,**

v.

**Dominic NAPPI, M.D., Frank Mattei, M.D., Ronald Anthony Codario, M.D., Saint Agnes Medical Center, William Mangino, M.D.**

Superior Court of Pennsylvania.

Argued March 8, 1988.

Filed Oct. 21, 1988.

Robert F. Morris, Norristown, for appellant.

Albert J. Schell, Jr., Philadelphia, for Nappi, appellee.

Richard A. Kolb, Philadelphia, for Saint Agnes, appellee.

Charles E. McClafferty, Philadelphia, for Mangino, appellee.

Before ROWLEY, WIEAND and MONTEMURO, JJ.

ROWLEY, Judge:

In this wrongful death and survival action, plaintiff/appellant, Angelo Jistarri, administrator of the estate of his mother, Adeline Jistarri, appeals timely from the judgment entered in favor of defendants/appellees on June 29, 1987.

Appellant instituted the present action against Doctors Dominic Nappi, Frank Mattei, Ronald Codario, and the Saint Agnes Medical Center (hereinafter "Saint Agnes"). He alleged that Doctors Nappi and Codario had been negligent in their treatment of Mrs. Jistarri and that Saint Agnes, the hospital in which Mrs. Jistarri was treated, was liable on a theory of ostensible or apparent agency. The alleged liability of Dr. Mattei was premised solely on his position as Dr.

Nappi's partner. Saint Agnes subsequently joined Dr. Mangino as an additional defendant.

The facts giving rise to the present action, as alleged by appellant, are that Dr. Mangino, an orthopedic resident, negligently applied a cast to Mrs. Jistarri's broken wrist without adequate padding, thereby causing an ulcer to develop beneath the cast; Dr. Nappi, an orthopedist, negligently failed to remove the cast and to diagnose the infection; the ulcer allowed a staphylococcus aureus infection to enter Mrs. Jistarri's bloodstream; and the infection spread to and damaged Mrs. Jistarri's heart, thereby weakening her and rendering her susceptible to the complications that eventually caused her death.

The case was tried before a jury. Dr. Codario, an internist and the primary physician in charge of the treatment of Mrs. Jistarri's staph aureus infection, was granted a compulsory nonsuit at the close of the presentation of plaintiff's case. On September 25, 1986, the jury returned a verdict in favor of the remaining defendants, who are now before us as appellees. Post-trial motions were filed and denied, and judgment was entered in favor of defendants/appellees.

In this appeal appellant contends that the trial court erred in 1) instructing the jury on the standard of care of an orthopedic resident; 2) instructing the jury that a physician does not warrant a cure or guarantee the result of treatment; and 3) denying appellant the right to read certain portions of the deposition of Dr. Codario, an adverse party. For the reasons set forth below, we affirm.

The events at issue herein began on September 13, 1980, when Mrs. Jistarri, who was eighty-five years old, suffered a fall in her home. X-rays taken two days later at Saint Agnes revealed an acute fresh fracture of the left wrist. On September 19, 1980, Dr. Mangino applied a cast to Mrs. Jistarri's left wrist in the emergency room at St. Agnes. She was told to return to the St. Agnes orthopedic clinic at a later date in order to have the cast checked by Dr. Nappi. On September 23, 1980, Mrs. Jistarri came to the clinic and was examined by Dr. Nappi, who reported no signs of

discomfort with the cast. At trial, however, appellant testified that at that time his mother had swollen, purple fingers and was complaining of pain. On September 24, 1980, Mrs. Jistarri was brought to the St. Agnes emergency room complaining of chest pain and was admitted into the care of Dr. Codario. Blood cultures revealed the presence of a staphylococcus aureus infection. On September 29, 1980, the cast was removed, revealing an area of redness with exudate. Several days later an ulcer was found in the same area. A culture taken from the ulcer revealed staph aureus. The infection responded well to treatment, and by mid-November Mrs. Jistarri appeared well enough to leave the hospital. She did not do so, however, owing to the inability of her children to care for her at home. On December 15, 1980, she became ill again. A number of complications developed, and she died on December 27, 1980.

■■■ Appellant challenges two aspects of the trial court's instructions to the jury. To determine whether the trial court erred in instructing the jury, as claimed by appellant, we must read the jury instructions in their entirety. *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984); *Spearing v. Starcher*, 367 Pa.Super. 22, 29–31, 532 A.2d 36, 40 (1987). To constitute reversible error, a jury instruction must be shown to have been not only erroneous, but also harmful to appellant. *Anderson v. Hughes*, 417 Pa. 87, 92, 208 A.2d 789, 791 (1965); *Spearing v. Starcher, supra.* If a charge is wholly inadequate or unclear, or if it has a tendency to mislead and confuse rather than to clarify issues, a new trial will be granted. *Spearing v. Starcher, supra.*

Appellant first challenges the trial court's instruction concerning the standard of care to which Dr. Mangino, an orthopedic *resident*, should be held. The trial court explained that:

A resident is a licensed physician receiving training in a specialty in a hospital. Now, he was not a fully-trained

orthopedist nor was he a general practitioner without any specialized training.

He is, therefore, held to exercise that degree of skill, learning and care normally possessed by an orthopedic resident in the circumstances of Dr. Mangino.

Under this professional standard of care, a physician must also keep informed of the contemporary developments in the medical profession and his specialty and he must use these current skills and knowledge.

N.T., 9/24/86, at 197. Appellant contends that the trial court erred in instructing the jury that Dr. Mangino should be held to exercise the same degree of skill, learning, and care normally possessed by orthopedic residents in the same circumstances. Relying on this Court's holding in *Pratt v. Stein*, 298 Pa.Super. 92, 444 A.2d 674 (1982), appellant asserts that an orthopedic resident must be held to the same standard of care as an orthopedic specialist.[1]

In *Pratt v. Stein, supra,* the defendant/appellant hospital argued on appeal that the trial court had erred in instructing the jury that the hospital's residents were to be held to the standard of an "ordinary physician." The basis of the hospital's objection was that while there had been extensive testimony concerning the standard of care for a specialist, there had been none concerning the standard of care for a nonspecialist.[2] It was noted that the courts of this Commonwealth had never directly addressed the question whether a resident should be held to the standard of a

1. Appellant does not contend, and therefore we do not consider, whether the proper application of a cast to a broken wrist is so basic and non-specialized a procedure that it falls within the standard of care to be expected even of a general practitioner.

2. Appellant makes a similar claim in the present case. He asserts that "[appellant's] expert witness Dr. Howard Balensweig, was a board-certified orthopedic specialist. There was no testimony as to whether Dr. Mangino failed to comply with some lower standard of care for orthopedic residents" (Brief for Appellant at 11). We are unable to evaluate this claim, as a transcript of Dr. Balensweig's videotaped testimony has not been included in the record that has been certified to this Court. The responsibility for providing a complete and comprehensive record rests with appellant. *Commonwealth v. Williams,* 357 Pa.Super. 462, 466, 516 A.2d 352, 354 (1986).

general practitioner or of a specialist. The Court described as "a sound conclusion" the ruling of the United States District Court in *Harrigan v. United States*, 408 F.Supp. 177 (E.D.Pa.1976), that a resident should be held to the standard of a specialist when the resident is acting within his field of specialty. *Pratt v. Stein*, 298 Pa.Super. at 157, 444 A.2d at 708. "It belies logic to assert that a resident authorized to practice his specialty on patients requiring and expecting the services of a specialist should, for some inexplicable reason, be judged against *the standard used to appraise the reasonableness of a non-specialist's conduct.*" *Id.* (footnote omitted; emphasis added). While agreeing "that the trial judge erred in instructing the jury to use the less exacting standard of care applicable to a non-specialist," *id.*, we concluded that since the error inured to the benefit of the defendant hospital, a new trial was unnecessary.

In the present case, unlike *Pratt v. Stein*, the jury was *not* instructed to use the "less exacting standard of care applicable to a non-specialist." Such an instruction would clearly have been error under *Pratt v. Stein*. To the contrary, the trial court in the present case explicitly informed the jury that Dr. Mangino was *not* a general practitioner without any specialized training. The court explained to the jury exactly what Dr. Mangino was: "a licensed physician *receiving training in a specialty* in a hospital" (emphasis added). Further, the court went on to say that Dr. Mangino was required to "keep informed of the contemporary developments in the medical profession *and his specialty* ..." (emphasis added).

■ Whether a resident should be held to an intermediate standard of care, such as that which the trial court instructed the jury to apply in the present case, is an issue that was not before us in *Pratt v. Stein*.[3] We conclude that the trial

3. Our research into the law of foreign jurisdictions has revealed a dearth of case law on the standard of care to be applied to a resident. The courts of California have held that a resident who holds himself out as a specialist shall be held to the standard of skill expected of a specialist, even though the defendant physician had completed only

court did not err in instructing the jury to apply to Dr. Mangino a standard of care higher than that for general practitioners but less than that for fully trained orthopedic specialists. Such an instruction recognizes that Dr. Mangino has had more training than a general practitioner but less than a fully trained orthopedist. To require a resident to meet the same standard of care as a fully trained specialist would be unrealistic. A resident may have had only days or weeks of training in the specialized residency program; a specialist, on the other hand, will have completed the residency program and may also have had years of experience in the specialized field. If we were to require the resident to exercise the same degree of skill and training as the specialist, we would, in effect, be requiring the resident to do the impossible.

In so holding, we do not deny "the reality ... that the vast majority of the day-to-day treatment which a patient receives is rendered by a resident employed by the hospital," *Pratt v. Stein*, 298 Pa.Super. at 157, 444 A.2d at 708, nor do we leave plaintiffs without recourse if a situation arises in which a resident has been given responsibilities that exceed the level of skill and training reasonably to be expected of one who is still learning his or her specialty. The ultimate responsibility for the training and supervision of residents lies with the employing hospital, and it is to the

one-third of his residency. *Valentine v. Kaiser Foundation Hospitals,* 194 Cal.App.2d 282, 15 Cal.Rptr. 26 (1961), *disapproved on other grounds, Siverson v. Weber,* 57 Cal.2d 834, 22 Cal.Rptr. 337, 372 P.2d 97 (1962). *See also Reeg v. Shaughnessy,* 570 F.2d 309 (10th Cir.1978) (although Oklahoma law apparently holds specialists to a higher standard of care than that required of general practitioners, it would have been improper to hold a general practitioner to the standard of an orthopedic surgeon, inasmuch as he was not board certified in that specialty and had not held himself out as an orthopedist; however, it was proper to hold him to a higher standard of care than that required of a general practitioner, given his additional expertise and training, which included numerous orthopedic operations); *Rush v. Akron General Hospital,* 171 N.E.2d 378 (Ohio Ct.App.1957) (unreasonable to hold interns, doing emergency work in a hospital, to the same standard of care expected of a physician and surgeon in the general practice of the profession); *Oko v. Rogers,* 125 Ill.App.3d 720, 81 Ill.Dec. 72, 466 N.E.2d 658 (1984) (not error to apply to a specialist the standard of care required of a general practitioner).

hospital that a plaintiff must turn in such a situation.[4] Accordingly, we hold that the trial court did not err in instructing the jury concerning the standard of care applicable to Dr. Mangino.

■ Appellant also asserts that the trial court erred in instructing the jury that a physician does not warrant a cure or guarantee the result of his or her treatment. Appellant concedes that the instruction, in and of itself, is a correct statement of the law. *See Collins v. Hand,* 431 Pa. 378, 383, 246 A.2d 398, 401 (1968) (in absence of a special contract, a physician neither warrants a cure nor guarantees the result of treatment). He argues, however, that as he had not made any claim based on a warranty theory, the trial court's instruction confused the jury. The relevant portion of the jury instruction is as follows:

> Professional negligence, also known as malpractice, consists of a careless or unskilled performance by a physician of the duties imposed upon him by his professional relationship with his patient.
>
> It is also negligence when a physician shows a lack of proper care and performance of a professional act.
>
> However, a physician does not warrant a cure, nor does he guarantee the result of his treatment.

N.T., 9/24/86, at 195–96. When the instruction to which appellant objects is read in context, it is apparent that the trial court did not, as appellant asserts, "introduce a concept which had no place in this case" (Brief for Appellant at 19). Instead, the court gave the jury a piece of information that was necessary if they were fully to understand the concept of negligence. Having read the instructions in their entirety, as we must, we conclude that the trial court did not err in giving the instruction in question.

Appellant's final issue is whether the trial court erred in denying his request to read portions of the deposition of Dr. Codario. The disputed portions of the deposition are not included in the record that has been certified to this Court.

---

**4.** Appellant does not allege, and we do not imply, that Saint Agnes should necessarily be held liable on such a theory in the present case.

Appellant asserts, however, that in the excluded portions of the deposition, Dr. Codario states repeatedly that in his opinion the staph infection entered Mrs. Jistarri's bloodstream through the ulcer under her cast.

Dr. Codario's deposition was taken on July 16, 1985. In a letter dated April 24, 1986, appellant's counsel informed appellees' counsel, "in lieu of Answers to Expert Witness Interrogatories," that he intended to read the deposition of Dr. Codario at trial. After receiving objections to this plan from appellees' counsel, appellant's counsel informed them, in a letter dated June 27, 1986, that in light of their objections he now intended to call Dr. Codario as an expert witness at trial, and "in lieu of answers to expert witness interrogatories, kindly refer to Dr. Codario's signed deposition...."

Trial began on September 18, 1986. At trial appellant's counsel called Dr. Codario as on cross-examination and informed the court that he intended to offer him as an expert witness in internal medicine and to ask him opinion questions (N.T., 9/18/86, at 127). Appellant's counsel explained that "I am not offering him at this point, at least, as a witness for the plaintiff [appellant]. He is an adverse party; but he has made admissions, including opinions, that are relevant to this case, and I intend to elicit those" (N.T., 9/18/86, at 129). Counsel for the opposing parties, including Dr. Codario, raised a number of objections: appellant had not listed Dr. Codario as an expert witness, he could not require Dr. Codario to give expert testimony against his will, and he should not be allowed to obtain expert testimony from Dr. Codario while at the same time refusing to offer Dr. Codario as his witness, thereby retaining the advantages that accompany the questioning of a witness as on cross-examination (N.T., 9/18/86, at 128–136). Instead of ruling on opposing counsel's objections, the trial court asked all parties to provide memoranda of law on the issues that had been raised (N.T., 9/18/86, at 135). Appellant's counsel proceeded to ask non-opinion questions of Dr. Codario. The next day, appellant's counsel informed the court

that he would read into evidence portions of Dr. Codario's deposition but that he would not ask opinion questions of Dr. Codario (N.T., 9/19/86, at 4–5). As a result, the trial court did not rule on the objections to appellant's initial plan to ask opinion questions of Dr. Codario.

However, when appellant's counsel attempted to read into evidence the portions of the deposition in which Dr. Codario stated that in his opinion the ulcer under Mrs. Jistarri's cast was the source of her staph infection, opposing counsel again objected. They argued that opinion testimony contained in the deposition was subject to the same objections as had been raised to opinion testimony given on the witness stand, and that, in addition, Dr. Codario's deposition had been noticed purely as a discovery deposition, Dr. Codario had not been prepared to give expert opinions at the deposition, opposing counsel had not been prepared to cross-examine him as if he were an expert witness, opposing counsel had agreed to the usual stipulations concerning all but the form of the questions, and the disputed portions of the deposition contained hearsay (N.T., 9/22/86, at 11–21). The trial court barred appellant's counsel from reading the portions of the deposition in which Dr. Codario gave his opinion as to the source of the staph infection, reasoning that these statements constituted substantive evidence against other defendants (N.T., 9/22/86, at 28–37). Appellant's counsel then read into evidence non-opinion portions of the deposition as substantive evidence in appellant's case (N.T., 9/22/86, at 33). Appellant's counsel did not question Dr. Codario on the witness stand concerning his opinion as to the source of the staph infection.

The admissibility of expert testimony is a matter within the sound discretion of the trial court, whose decision will not be reversed absent a clear abuse of that discretion. *Pascone v. Thomas Jefferson University*, 357 Pa.Super. 524, 529, 516 A.2d 384, 386 (1986), *appeal denied*, 517 Pa. 320, 536 A.2d 338 (1988). Moreover, we may affirm the decision of the trial court if it is correct on any ground. *E.J. McAleer & Co. v. Iceland Products, Inc.*, 475 Pa. 610,

613 n. 4, 381 A.2d 441, 443 n. 4 (1977); *Pascone v. Thomas Jefferson University, supra.* We note also that an order refusing to grant a new trial will not be disturbed absent a manifest abuse of discretion or an error of law. *Bell v. Western Pennsylvania Hospital,* 293 Pa.Super. 37, 42, 437 A.2d 978, 981 (1981).

 In its opinion, the trial court explains that appellant was denied the right to read the challenged portions of the deposition because 1) appellant was attempting to introduce an expert opinion without having identified Dr. Codario as an expert and without having furnished a synopsis of his expected testimony, as required by Pa.R.C.P. 4003.5; and 2) an expert witness may not be compelled to give an opinion against his will. Resolution of appellant's contention that the trial court erred in so holding requires that we examine several of the Rules of Civil Procedure. Appellant relies on Pa.R.C.P. 4020(a)(2) and (5) to support his argument that the trial court erred in refusing to allow the disputed portions of the deposition to be read into evidence. Rule 4020(a)(5), which provides that the deposition of a medical witness, *other than a party,* may be used at trial for any purpose, regardless of the witness's availability, is inapplicable in the present case. Although Dr. Codario was eventually granted a nonsuit, he was still a party when appellant sought to introduce portions of his deposition into evidence. Therefore, Rule 4020(a)(5) does not apply. Rule 4020(a)(2), on the other hand, which provides that the deposition of a party may be used by an adverse party for any purpose, is applicable. However, it contains a limitation not acknowledged by appellant: the deposition may be so used *only insofar as it is admissible under the rules of evidence.*[5] In general, therefore, the test of admissibility of a deposition under Rule 4020(a)(2) is the same as that for the admissibility of like testimony offered by a witness on the

---

**5.** *Rivera v. Philadelphia Theological Seminary,* 326 Pa.Super. 509, 474 A.2d 605 (1984), *modified,* 510 Pa. 1, 507 A.2d 1 (1986), cited by appellant, does not hold otherwise. The relevant issue in *Rivera* was whether the rector of the defendant seminary was a managing agent within the meaning of Rule 4020(a)(2).

stand in open court. *Pascone v. Thomas Jefferson University*, 357 Pa.Super. at 530, 516 A.2d at 387. Appellant has proffered the deposition testimony of Dr. Codario as that of an expert witness in the field of internal medicine. Therefore, the disputed portions of the deposition, even though they are part of the deposition of a party, must meet the standards to which expert testimony in general is held.

We do not agree with the trial court that appellant failed to give notice of his intention to introduce Dr. Codario's expert testimony. Rule 4003.5 provides that a party may, through interrogatories, require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to have the expert state, either in answers to the interrogatories or in a separate report, the substance of the facts and opinions to which he or she is expected to testify and a summary of the grounds for each opinion. While the notification procedure chosen by appellant was hardly ideal, we cannot say that appellees were denied notice that Dr. Codario might be called by appellant as an expert witness. They were informed almost five months prior to trial, by the letter of appellant's counsel dated April 24, 1986, that Dr. Codario would, in effect, be offered as an expert witness and that his opinion testimony would be that which was contained in his deposition.[6] The purpose of Rule 4003.5 is to prevent the unfairness that would occur if one party were unable to counter the expertise of a surprise witness produced at the last minute by the opposing party. *See Clark v. Hoerner*, 362 Pa.Super. 588, 598, 525 A.2d 377, 382 (1987). The notice provided by appellant in the present case was sufficient to allow appellees to counter the opinion testimony, in whatever form it might be offered, of Dr. Codario.

**6.** Appellant does not assert that the notice requirements of Rule 4003.5 do not apply to the discovery of opinions of an expert witness who is a party. *See Neal by Neal v. Lu*, 365 Pa.Super. 464, 470, 530 A.2d 103, 106 (1987), cited by appellant for another proposition.

The second reason offered by the trial court in support of its ruling is that allowing the disputed portions of the deposition to be read into evidence would be tantamount to compelling Dr. Codario to give an expert opinion against his will. The basis for the trial court's ruling was our Supreme Court's holding in *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961). In that case, defendant/appellant Otis sought to call Mr. Geise, an expert retained by plaintiff/appellee Evans, to testify as a witness, both factual and expert, for Otis. Geise had already been examined by Evans and cross-examined by Otis. The trial court recognized the expert's right not to testify as an expert witness for the adverse party, and the Supreme Court affirmed. *Id.*, 403 Pa. at 27, 168 A.2d at 580.

Appellant suggests several reasons why the rule of *Evans v. Otis Elevator Co.* should not be applied in the present case. First, he argues that "[i]n the area of medical causation the line between fact and opinion is often times unclear" (Brief for Appellant at 16), and therefore Dr. Codario's determination of the source of Mrs. Jistarri's infection could be considered a fact rather than an expert opinion. However, appellant characterized the disputed portions of the deposition as opinion testimony in his arguments to the trial court, and he cannot now argue a different theory to this Court. Moreover, Dr. Donald Kaye, a board-certified specialist in internal medicine and infectious diseases who was called as an expert witness by Doctors Nappi and Mattei, testified that in his opinion there were three possible sites, all equally likely, at which the staph infection could have entered Mrs. Jistarri's bloodstream: the ulcer; her leg, which had been swollen and tender; and a non-apparent skin lesion (N.T., 9/22/86, at 142–143). Dr. Kaye added that the lungs were a possible but less likely source (N.T., 9/22/86, at 143–44) and that he was unable to say with a reasonable degree of medical certainty where the infection had entered the bloodstream (N.T., 9/22/86, at 158). Dr. Codario's determination of the source of the infection cannot reasonably be viewed as a matter of fact if that "fact" is disputed by another expert.

Second, appellant points out that Pa.R.C.P. 4011(f), which provided that no discovery would be permitted which would require a deponent, whether or not a party, to give an opinion as an expert witness over his objection, has been rescinded. *See Neal by Neal v. Lu,* 365 Pa.Super. 464, 470, 530 A.2d 103, 106 (1987). The issue before us, however, is not what can be discovered, but what can be admitted into evidence at trial. As Pa.R.C.P. 4003.1 [7] makes clear, information may properly be sought during discovery even though that information may not be admissible at trial. Therefore, the fact that Dr. Codario could not refuse to give an expert opinion in the course of his deposition does not mean that the portions of his deposition in which expert opinions are expressed must be admitted into evidence.

Finally, appellant suggests that the right to refuse to give expert testimony for the adverse party, which was affirmed in *Evans v. Otis Elevator Co.,* can be claimed only by a *non-party* expert witness. While the expert witness in that case was indeed a non-party, the holding by its terms is not limited to non-parties, and appellant has not suggested why the holding should be so limited. Moreover, although Dr. Codario was a party to the case at the time that appellant sought to have his deposition admitted into evidence, his position with respect to the excluded portions of the deposition was essentially no different than if he had been a non-party expert who had been asked by appellant to testify concerning the care exercised *by the other defendant physicians.* As appellant explains in his brief,

[o]ne of the fundamental issues in this case was whether the staph aureus infection entered Mrs. Jistarri's bloodstream through the ulcer which was found under her cast. Defendant Ronald Codario is a board certified specialist in internal medicine and was the primary attending physician *in charge of the care and treatment for the systemic infection suffered by Adeline Jistarri.*

7. Rule 4003.1 states, in pertinent part, "It is not ground for objection that the information sought [through discovery] will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

During his pretrial deposition Dr. Codario was questioned repeatedly as to whether he was able to determine the source of the infection. Dr. Codario stated on at least eight occasions in his deposition that the source of the infection was the ulcer under her cast.

(Brief for Appellant at 12; emphasis added.) As this statement makes clear, Dr. Codario treated Mrs. Jistarri *after* the systemic infection had developed. Appellant does not accuse Dr. Codario of having caused that infection, nor has appellant appealed the grant of a compulsory nonsuit to Dr. Codario. Thus, it is beyond dispute that Dr. Codario's statements concerning the source of the staph infection, if admitted into evidence at a new trial as requested by appellant, would not address Dr. Codario's own liability, but rather that of the other defendant physicians.

The question before us, therefore, is not whether a medical expert who is also a defendant may be required to give expert testimony that is relevant to his own allegedly negligent conduct, but whether such a witness may be required to give expert testimony concerning the allegedly negligent conduct of other defendants. We conclude that he may not. If appellant desired to present expert testimony concerning the origin of the staph infection as substantive evidence against Doctors Nappi, Mattei, and Mangino, he was free to retain his own expert witnesses; in fact, appellant retained Dr. Balenszweig, an orthopedic specialist. Given our Supreme Court's holding in *Evans v. Otis Elevator Co.*, however, appellant was not free to require Dr. Codario to give expert testimony, against his will, against the other defendants. "[T]he private litigant has no more right to compel a citizen to give up the product of his brain, than he has to compel the giving up of material things." *Pennsylvania Company for Insurances, etc., Trustee v. Philadelphia,* 262 Pa. 439, 442, 105 A. 630 (1918), cited in *Evans v. Otis Elevator Co., supra.* Accordingly, we perceive no abuse of discretion in the trial court's decision to exclude from evidence the portions of Dr. Codario's deposition in which Dr.

Codario stated an opinion concerning the source of the staph infection.

Having examined the record and the arguments advanced by the parties, we conclude that the issues raised by appellant are without merit. Accordingly, we affirm the judgment entered in favor of appellees.

JUDGMENT AFFIRMED.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting:

I agree with the majority that the trial court correctly instructed the jury (1) on the standard of care for an orthopedic resident and (2) that a physician does not warrant a cure. For the reasons which follow, however, I respectfully dissent from the majority's determination that the depositions of the defendant physician could not be read to the jury.

With respect to this issue, I would hold that the controlling authority is Pa.R.C.P. 4020(a)(2), which provides as follows:

> (a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions:
>
> . . . .
>
> (2) The deposition of a party ... may be used by an adverse party for any purpose.

This rule required that appellant be permitted to use Dr. Codario's depositions, including the portion wherein he opined that the staph infection had entered the decedent's blood stream through the ulcer under her cast.

The majority relies upon decisions of the Pennsylvania Supreme Court in *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961) and *Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee v. Phil-*

*adelphia*, 262 Pa. 439, 105 A. 630 (1918). These decisions do, as the majority correctly observes, hold that a witness cannot be compelled to give expert opinion testimony against his will. In those cases, however, the expert witness was an independent witness and not a party to the action. In the instant case, the testimony being offered by the plaintiff was that of a party defendant. Such testimony was admissible. It was not rendered inadmissible because the defendant, who was also a physician, had expressed a medical opinion.

My research discloses no appellate court decision in this Commonwealth which holds that a physician who is a party cannot be examined about his medical opinion without his consent. The issue, however, was considered at the trial court level in a decision by the Court of Common Pleas of Northampton County in *Decker v. Pohlidal*, 22 D. & C.2d 631 (1960). There, the trial court rejected the rationale relied upon by the majority in the instant case. It reasoned as follows:

> Defense counsel contends that his objections should be sustained on the theory that Doctor Pohlidal cannot be asked by plaintiff to express his expert opinion on any matter. In support of this contention counsel cites the case of *Penna. Co. for Ins. on Lives and Granting Annuities v. Philadelphia*, 262 Pa. 439, wherein, at pages 441, 442, Justice Simpson stated:
>
> "The process of the courts may always be invoked to require witnesses to appear and testify to any facts within their knowledge; but no private litigant has a right to ask them to go beyond that.... But the private litigant has no more right to compel a citizen to give up the product of his brain, than he has to compel the giving up of material things. In each case it is a matter of bargain, which, as ever, it takes two to make, and to make unconstrained."
>
> We cannot and do not sustain defendant's objections on this ground. *The foregoing expert witness rule is inapplicable where defendant-doctor, himself an expert, is*

*on trial for malpractice. In such situation no sound distinction can be drawn between questioning defendant-doctor as to fact and questioning him concerning his opinion, since fact and opinion are inextricably intermingled on the fundamental issue as to whether defendant-doctor departed from accepted standards in diagnosing and treating plaintiff's injuries.*

*Id.* at 639–640 (emphasis added). In my judgment, this reasoning is sound.[1]

The courts of other jurisdictions have uniformly adopted similar reasoning in concluding that a plaintiff may question a defendant physician regarding matters which require the expression of medical opinion. See, e.g.: *Lawless v. Calaway,* 24 Cal.2d 81, 147 P.2d 604 (1944); *Abbey v. Jackson,* 483 A.2d 330 (D.C.App.1984); *Nishi v. Hartwell,* 52 Haw. 188, 473 P.2d 116 (1970); *Walker v. Distler,* 78 Idaho 38, 296 P.2d 452 (1956); *State for Use of Miles v. Brainin,* 224 Md. 156, 167 A.2d 117, 88 A.L.R.2d 1178 (1961); *Dark v. Fetzer,* 6 Mich.App. 308, 149 N.W.2d 222 (1967); *Anderson v. Florence,* 288 Minn. 351, 181 N.W.2d 873 (1970); *McDermott v. Manhattan Eye, Ear & Throat Hospital,* 15 N.Y.2d 20, 255 N.Y.S.2d 65, 203 N.E.2d 469 (1964); *Iverson v. Lancaster,* 158 N.W.2d 507 (N.D.1968); *Oleksiw v. Weidener,* 2 Ohio St.2d 147, 207 N.E.2d 375 (1965); *Wilkinson v. Vesey,* 110 R.I. 606, 295 A.2d 676

---

**1.** In *Horst v. Shearburn,* 87 Montg.Co.L.R. 214 (1966), *aff'd,* 426 Pa. 439, 233 A.2d 236 (1967), the Court of Common Pleas of Montgomery County ruled that the plaintiff in a malpractice action could not compel the defendant physician to testify as an expert at trial to establish the generally accepted medical practice in the community. The court's ruling, however, was based primarily on the fact that the plaintiff had presented his own expert witnesses at trial to testify on this point. The court left open the possibility that such testimony from a defendant physician would be proper under other circumstances, stating in dicta that:

In the case at bar, the plaintiff had three expert medical witnesses, two of whom testified fully as to the medical and surgical procedures of the defendant in relation to the community standards. If the plaintiff had been unable to obtain his own expert witnesses and was faced with a nonsuit, it is possible that the court may well have granted the plaintiff's request to call the defendant as his only expert.

*Horst v. Shearburn, supra* at 229.

(1972); *Shurpit v. Brah,* 30 Wis.2d 388, 141 N.W.2d 266 (1966). See also: *Rogotzki v. Schept,* 91 N.J.Super. 135, 219 A.2d 426 (1966) (in malpractice action it is proper in pre-trial discovery for plaintiff to inquire of defendant physicians as to their opinion and the exercise of their judgment).

In my judgment, this is the better view. I am persuaded by the rationale of the New York Court of Appeals in *McDermott v. Manhattan Eye, Ear & Throat Hospital, supra,* where the Court said:

There is nothing unfair about such a practice. Unlike his counterpart in a criminal prosecution, the defendant in a civil suit has no inherent right to remain silent or, once on the stand, to answer only those inquiries which will have no adverse effect on his case. Rather, he must, if called as a witness, respond to virtually all questions aimed at eliciting information, he may possess relevant to the issues, even though his testimony on such matters might further the plaintiff's case. We cannot agree with the suggestion that it is somehow neither sporting nor consistent with the adversary system to allow a party to prove his case through his opponent's own testimony (see, e.g., *Osborn v. Carey,* 24 Idaho 158, 168, 132 P. 967, *supra;* see, also, Comment, 5 So.Cal.L.Rev. 448, 449–450) but, whatever the merits of this view, we prefer to believe that, in a situation such as the present, "[t]he ultimate requirement that judicial decisions be based on the * * * facts overcomes any detriment which might be suffered by the adversary system". (Friedenthal, Discovery and Use of an Adverse Party's Expert Information, 14 Stan.L.Rev. 455, 487; see, also, King, The Adverse Witness Statute and Expert Opinion, 4 Wayne L.Rev. 228, 229.)

. . . .

Courts are intent upon arriving at just decisions and upon employing properly expedient means to attain such an end. If a defendant in a malpractice action may truthful-

ly testify that his conduct conformed to the standard required, his case is, of course, substantially strenghtened [sic] and, if he cannot so testify, the plaintiff's chances of recovery are unquestionably increased. In either case, the objective of the court in doing justice is achieved.

It is true that, in *People ex rel. Kraushaar Bros. & Co. v. Thorpe,* 296 N.Y. 223, 72 N.E.2d 165, upon which the courts below and the defendants rely, this court explicitly held that a person may not be compelled to testify and give his opinion as an expert against his will. Our holding in *Kraushaar,* however, is not dispositive of the issue now before us. In that case, the witness (a real estate appraiser) called to testify as an expert was not a party to the action. Such an independent, disinterested witness, we held, could not be required to testify as an expert. That our decision in *Kraushaar* was not concerned with the situation where the expert and the defendant are one and the same person is implicit from the very tone of the opinion itself and, more importantly, from the reasoning underlying the decision. That reasoning, although not expressly articulated in the opinion, was relied upon in *Buchman v. State,* 59 Ind. 1, a case cited with approval in *Kraushaar* (296 N.Y., at p. 225, 72 N.E.2d, at p. 166). As the Indiana court noted (59 Ind. 1, 6), " 'to compel a person to attend [a trial] merely because he is accomplished in a particular science, art, or profession, would subject the same individual to be called upon, in every cause in which any question in his department of knowledge is to be solved. Thus, the most eminent physician might be compelled * * * to attend from the remotest part of the district, and give his opinion in every trial in which a medical question should arise' ".

It is quite clear that no such burden or unfairness is occasioned by the practice of compelling a doctor, who is actually a defendant in the malpractice action, to testify as an expert. It is, therefore, not inconsistent to permit the plaintiff to question the defendant as an expert even though we would not accord him the same right with

respect to an unwilling witness who is in no way connected with the action. The very inability of a plaintiff in a malpractice action to compel the attendance and testimony of a "disinterested" medical witness underscores the need and importance of allowing such a plaintiff the opportunity of questioning his adversary as an expert. *McDermott v. Manhattan Eye, Ear & Throat Hospital, supra*, at 28–29, 255 N.Y.S.2d at 72–73, 203 N.E.2d at 474–475.

It must necessarily follow from this reasoning that the trial court erred when it refused to allow plaintiff to read to the jury the deposition testimony of Dr. Codario, a party defendant. As to Dr. Codario, however, the error was harmless. The receipt of his testimony regarding the entry of the staph infection, as the majority has explained, would not have altered his non-liability, for his treatment of the patient did not commence until after the infection had developed. As to him, the compulsory non-suit was properly entered.

For these reasons, I would reverse and remand for new trial the claims against all defendants except Dr. Codario. As to him, I would affirm.